## ELY *vs.* SCOFIELD and others.

The discharge of a mortgage, by the mortgagee or his administrator, after he has assigned the mortgage to another, without payment and without authority from the assignee, has no other effect than to cancel the record of the mortgage.

The validity of the mortgage is in no way affected by such a discharge, excepting that the priority of the mortgage over a subsequent recorded deed is taken away.

A mortgagee being dead, his administrator is ostensibly the proper person to acknowledge satisfaction of the mortgage, and his certificate is effectual, when properly recorded, to cancel the record of the mortgage, as against subsequent purchasers and mortgagees in good faith without notice.

Direct notice to a purchaser, after he has made his purchase, paid the price and taken a deed, of a prior unregistered mortgage upon the land purchased, is not equivalent to a recording of the mortgage, so as to preserve the priority of the lien of such mortgage.

When an assignment of a mortgage is recorded, the record is notice to all the world, except the mortgagor, his heirs and personal representatives.

The lien of a prior unregistered mortgage is superior to that of a subsequent unrecorded deed:

ACTION to foreclose a mortgage. On the 19th of March, 1851, Cyril Carpenter executed and delivered to Phebe Brockway his bond, dated on that day, in the penal sum of $500, conditioned to pay $274 in four equal annual payments, from April 1st, then next, to secure the payment whereof the said Carpenter, at the same time, executed to said Phebe Brockway a mortgage upon certain real estate in the village of Brockport, in the county of Monroe. This mortgage was duly recorded in the Monroe county clerk's office, March 21st, 1851. Mrs. Brockway, the mortgagee, died intestate in August, 1851, and Charles M. Brockway was duly appointed her administrator. He, on the 2d day of March, 1855, for the consideration of $155.38, by writing under his hand and seal, assigned the bond and mortgage to the plaintiff, who brought this action to foreclose it.

The defendants, Eliphalet Whitney, Rufus Scofield and Ansel Chappell, appeared and put in their answer, in which they state as one defense that prior to the first day of March,

Ely *v.* Scofield.

1855, and prior to any transfer of the mortgage to the plaintiff, the entire amount of the moneys mentioned and due and unpaid on said bond and mortgage was paid to Charles M. Brockway, administrator as aforesaid, and the said bond and mortgage fully paid and satisfied. In another defense set up in the answer, the defendants allege that after the delivery of the bond and mortgage, and on the 20th of March, 1851, the said Cyril Carpenter sold and conveyed the mortgaged premises, by deed, to one Dewitt C. Greenleaf, the latter assuming the payment of the bond and mortgage, as part of the purchase price. And that accordingly said Greenleaf afterwards, and before any transfer thereof had been made by Brockway to the plaintiff, and before the first of March, 1855, paid to Brockway the moneys secured and unpaid upon the said bond and mortgage.

The defendant Rufus Scofield, in another defense set forth in the answer, alleges that on the 20th of April, 1858, he purchased in good faith a portion of the mortgaged premises, of Enos S. Chappell, the then owner thereof, and paid him therefor a large sum. That prior to taking a conveyance thereof from said Chappell, he caused a search of title to the premises to be made by the clerk of Monroe county. That the clerk made a certificate of such search, which certificate bears date April 20th, 1858, and contains an abstract of the title of such premises. That in such abstract said mortgage is referred to and is noted and entered as having been duly discharged; alleging also that a satisfaction of said mortgage in due form of law, executed and acknowledged by said administrator, had, prior to said search, been duly recorded in said clerk's office. Also, that no assignment by Brockway, the administrator, to the plaintiff, of said bond and mortgage, was recorded in said clerk's office prior to or at the time of making such search, or prior to the recording of the deed from Chappell to the defendant Scofield. In this statement of his defense, Scofield denies that at the time or prior to his purchase he had any notice or knowledge that said mortgage

had been transferred to or was claimed by the plaintiff, and alleges that he was informed and believed that said mortgage had been fully paid and satisfied, &c. and claims that, as to him, the same is fully discharged, whether paid in fact or not.

The action was referred to George G. Munger, Esq. to hear and determine. The cause was tried before the referee, who, on the 23d of July, 1860, made a report, in which he found as conclusions of fact that the bond and mortgage set forth in the complaint was executed and delivered, recorded and assigned and owned, as set forth in the complaint; and further, that Charles M. Brockway was the administrator of Phebe Brockway, deceased, and that the plaintiff was, and ever since March 2d, 1855, had been the owner of said bond and mortgage, as all said facts are alleged in the complaint and admitted by the pleadings. That the money embraced in said bond and mortgage was never paid to said Charles M. Brockway, or to any other person, but is still due and unpaid, except as is indorsed on said bond. That Dewitt C. Greenleaf did not at any time pay to Charles M. Brockway, or to any other person, the whole amount unpaid and secured by said bond and mortgage; but he paid only such part of the same as is actually indorsed on the bond; and the money thus paid was not received as full payment and satisfaction of said bond and mortgage. That the defendant E. S. Chappell, being the owner of the aforesaid mortgaged premises, sold the same to the defendant Rufus Scofield, a *bona fide* purchaser in good faith, for a valuable consideration, and without knowledge or notice of the mortgage held by the plaintiff. That Chappell executed to said Scofield a deed for a part of said premises, dated April 21st, 1858, which was recorded May 14th, 1858, and that said Chappell also executed to said Scofield a deed for the residue of said premises, dated May 15th, 1858, which last named deed has not been recorded. That a discharge of the before named mortgage to Phebe Brockway, now held by the plaintiff, was executed by Charles M. Brockway, administrator, &c. by mistake, with-

Ely *v.* Scofield.

out payment and without the authority or knowledge of the plaintiff, the assignee, dated April 9th, 1858, and was recorded May 4th, 1858. That on the 13th day of May, 1858, and before the deed executed to said Scofield had been recorded, Carpenter, the mortgagee, gave direct personal notice to Scofield that such discharge had been executed wrongfully by said Brockway. The referee further reported, as a conclusion of law, that the said discharge, being made without authority, could no more than cancel the record, but did not impair the mortgage as an unrecorded lien; and that the direct notice of this mortgage to Scofield, before the deed to him was recorded, was equivalent to a record, and preserved the priority of the lien of the mortgage, so that the whole mortgaged premises are now holden for the balance due on the bond and mortgage; which balance the referee had computed, and found it to be $191.81. The usual judgment of foreclosure and sale was entered upon this report, with costs, &c.

The present appeal was brought by the defendant Scofield, from the above judgment.

*W. F. Coggswell,* for the appellant.

*H. Humphrey,* for the respondent.

*By the Court,* WELLES, J. I agree with the referee that the discharge of the mortgage in question by Brockway, the administrator of the mortgagee, after he had assigned the mortgage to the plaintiff, without payment and without authority from the assignee, had no other effect than to cancel the record of the mortgage, and left the plaintiff in the condition of the holder of an unrecorded lien upon the mortgaged premises. The validity of the mortgage was in no way affected by the discharge, excepting to take away its priority over the defendants' deed. Brockway, the administrator, had really no more right to receive payment of the mortgage, or to satisfy it of record, than any other stranger. Payment was

not made, and the satisfaction, as the referee finds, was acknowledged by mistake without payment, and without authority from the plaintiff, who was really the only person who had the legal right to acknowledge satisfaction of the mortgage. Brockway, the administrator, was nevertheless, ostensibly, the proper person to acknowledge the satisfaction, and his certificate was effectual, when properly recorded, to cancel the record of the mortgage, as against subsequent purchasers and mortgagees in good faith without notice.

But I am constrained to differ with the learned referee in the proposition that the direct notice to Scofield of the mortgage, given to him before his deed from Chappell was recorded, was equivalent to a record, and preserved the priority of the lien of the mortgage. That notice was given after he had made the purchase, paid his money and taken his deed. The transaction between him and Chappell, of the purchase of the mortgaged premises, was completed and his rights had become fixed. After that, a notice to him would be of no service whatever. The referee finds, distinctly, that the defendant Scofield was a *bona fide* purchaser from Chappell, the owner of the land, in good faith, for a valuable consideration, and without knowledge or notice of the mortgage held by the plaintiff. The revised statutes provide that every conveyance of real estate, within this state, shall be recorded in the office of the clerk of the county where such real estate shall be situated; and if not so recorded, shall be void as against any subsequent purchaser in good faith for a valuable consideration, of the same real estate or any part thereof, whose conveyance shall be first duly recorded. (1 *R. S.* 756, § 1, *ch.* 3, *part* 2.) By sections 36, 37 and 38 of the same chapter, (*p.* 762,) the terms "real estate," "purchaser" and "conveyance," as used in that chapter, are defined. "Real estate" is defined to embrace, among other things, all chattels real, except leases for a term not exceeding three years. (§ 36.) A mortgage is a chattel real. (*Burrill's Law Dic.* "*Chattels real.*") The term "purchaser" embraces an as-

signee of a mortgage, or lease, or other conditional estate. (§ 37.) A mortgage is here contemplated as creating a conditional estate in land. The term "conveyance," as used in the chapter referred to, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity; except last wills and testaments, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands. (§ 38.) By § 41 of the same chapter, (*p.* 763,) it is declared that the recording of an assignment of a mortgage shall not be deemed, in itself, notice of such assignment, to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee. The references to the statutes embrace all the provisions thereof which can be claimed to bear upon the questions involved in the present case. If the plaintiff occupies no better or more advantageous position than the holder of a prior unrecorded mortgage, it is quite plain to my mind that the title of the defendant Scofield to the premises embraced in his first deed from Chappell, and which bears date April 21st, 1858, and was recorded May 4th of the same year, is to be regarded and taken as prior to the lien of the mortgage held by the plaintiff and wholly discharged therefrom. The notice to Scofield was after that deed was executed and delivered, but before it was recorded. It was competent for the plaintiff to have put his assignment on record, and thus have protected himself against the satisfaction of the mortgage by Brockway. Such record would have been notice to all the world, excepting the mortgagor, his heirs and personal representatives. Scofield was neither mortgagor nor his heir or personal representative, and therefore not within the exception of the statute, (*Vanderkemp* v. *Shelton,* 11 *Paige,* 37, 38,) but he was a subsequent purchaser in good faith, for valuable consideration. He is therefore within the express language of the first section of the chap-

ter referred to. His deed is recorded, and the record of the mortgage is canceled. The mortgage is, as to its priority over the recorded deed of Chappell to Scofield, the same as if it never existed. The notice, in order to have any effect upon him in respect to the land embraced in that deed, should have been given before the purchase.

But with respect to the portion of the mortgaged premises not embraced in Scofield's recorded deed from Chappell, the lien of the plaintiff's mortgage is prior and superior to Scofield's title through his unrecorded deed. The parties stand upon equal grounds, as far as the record is concerned, and the statute only gives priority to a recorded conveyance; and the mortgage being anterior to the last deed, must prevail over it.

The judgment appealed from, so far as it subjects that part of the mortgaged premises described and embraced in the deed from the defendant Chappell to the defendant Scofield, dated April 21st, 1858, and recorded May 4th, of that year, to the lien of the mortgage from the defendant Carpenter to Phebe Brockway, dated March 19th, 1851, and assigned by her administrator to the plaintiff, is reversed, and the premises last referred to declared discharged and free from the lien, operation and effect of that mortgage. The lien of said mortgage upon the residue of the mortgaged premises to be declared valid and effectual. The defendant Carpenter to be charged personally with any deficiency that may appear by the sheriff's report of sale, and none of the other defendants to be so charged. The judgment to be modified accordingly, and to be in all other respects affirmed.

[Monroe General Term, December 2, 1861. *Smith, Johnson* and *Welles,* Justices.]