MARIA E. SMITH, ADMINISTRATRIX, ETC., OF MINORRIS SMITH, DECEASED, APPELLANT, v. THOMAS ROBINSON, RESPONDENT, IMPLEADED, ETC.

30 269
88 224
30h 269
66 AD³ 405

*Letters of administration — when they make valid acts done by the administrator prior to his appointment — evidence — admissions of persons interested — when they are admissible.*

The plaintiff's intestate died in 1863, leaving him surviving, his widow, two sons Elijah and Morgan, and the plantiff a granddaughter. He then owned a bond and mortgage which had been given to him by Elijah. March 31, 1865, Elijah sold the land covered by the mortgage to one Snow, who had no knowledge of the existence of the bond and mortgage. Snow paid $2,000 in cash, which was more than the amount due upon the said bond and mortgage, and gave back a new bond and mortgage to secure the payment of the residue of the purchase-money. At about the time of the delivery of the deed the next of kin — all of whom except the plaintiff were of age — executed and acknowledged a discharge in writing, under seal, of the said mortgage given by Elijah and indorsed a receipt in full upon the bond. This satisfaction and the bond and mortgage were delivered, with other old papers, to Snow who did not examine them. In April, 1877, letters of administration upon the estate were for the first time issued, by which Elijah was appointed administrator. He duly qualified and continued to act until July, 1879, when the letters were revoked, and letters *de bonis non* were granted to the plaintiff. The plaintiff never received any portion of the money paid by Snow.

In this action brought by the plaintiff to foreclose the first mortgage against persons who claimed title under Snow, upon the ground that the discharge and receipt were invalid and void :

*Held*, that the discharge became valid and effective, and binding upon all persons interested in the estate, upon the granting of letters of administration to Elijah in 1877, and that its validity and effect were not destroyed by the subsequent revocation of the letters so issued.

Upon the trial evidence was given of admissions made by the widow and Eljiah, to the effect that the bond and mortgage were satisfied and discharged.

*Held*, that the evidence was competent as showing that the bond and mortgage should not be enforced in their interest.

Elijah at the trial was asked by the plaintiff whether he intended to deliver the bond and mortgage, with the discharge, to Snow at the time he delivered the other papers.

*Held*, that as the plaintiff denied, and Elijah did not admit, that the discharge had ever been delivered to Snow, the court properly excluded the evidence.

Appeal from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury in an action brought to foreclose a mortgage.

Minorris Smith died intestate in the year 1863, leaving him surviving Margaret Smith his widow, Elijah Smith, one of the defendants, and Morgan H. Smith, his sons, and the plaintiff Maria E. Tibbits, the only child of a deceased daughter, his only heirs-at-law and next of kin.

Among the assets belonging to the estate of the deceased were a bond and mortgage, made by the defendant Elijah Smith, as mortgagor, to Minorris Smith as mortgagee, conditioned for the payment of the sum of $1,000 on the 9th of November, 1866, with annual interest. At this time the said Elijah Smith was the owner in fee of the mortgaged premises, and remained such owner until the 31st day of March, 1865, when he, by a deed containing covenants of warranty, conveyed the same to one Ira L. Snow. At this time also the said bond and mortgage remained unpaid, and no letters of administration had been granted upon the estate of the intestate. At the time of the execution and delivery of the deed of conveyance Mr. Snow paid to Smith his grantor, in cash $2,000, as part of the purchase-money, which sum was greater than the amount unpaid upon the bond and mortgage. Smith did not disclose to the purchaser, Mr. Snow, the existence of the bond and mortgage, and the latter was ignorant of its existence. At the time the deed was delivered, or shortly thereafter, all of the persons who have been named as the next of kin of the deceased, executed and acknowledged a discharge in writing, under seal of the said mortgage, in which it is recited that they were collectively the only heirs and next of kin of the deceased, and that the said mortgage "is redeemed, paid off, satisfied and discharged." And upon the bond the same persons indorsed and signed a receipt of payment in full. The discharge and the receipt both bear date the same day as the deed, the 31st of March, 1865. On the same day that the deed was delivered, or shortly thereafter, Elijah Smith, with other papers relating to the title of the premises, delivered the same to Mr. Snow, calling his attention to the same, and declaring that they were some old papers of no use to himself and probably would not be to him, as they were old deeds and mortgages relating to the farm. Mr. Snow received the papers, making no examination of the same, and did not, in fact, know that the bond and mortgage, receipt and discharge, were among the papers. On the day that

Snow purchased the property he executed a bond and mortgage upon the same as a part of the purchase-money, which mortgage was afterwards foreclosed, and Snow's title was transferred to the purchaser at the foreclosure sale ; and the defendant Thomas Robinson is now the owner of a mortgage upon the said premises, his mortgagor deriving his title by *mesne* conveyance from Mr. Snow, Elijah Smith's grantee.

In April, 1877, the said Elijah Smith was duly appointed administrator of the estate of the deceased, and gave the usual and customary bond, and letters of administration were issued to him by the surrogate of Wayne county. In July, 1879, the said letters of administration were revoked, and the plaintiff was appointed administratrix *de bonis non*, and soon thereafter commenced this action to foreclose the bond and mortgage, which belonged to the estate of Minorris Smith at the time of his death. Thomas Robinson is the only defendant who answers. The others have suffered a default. The court found as a fact, that " on or about March 31, 1865, the defendant Elijah Smith, received from Ira L. Snow full payment of all moneys secured to be paid on the said bond and mortgage, and on the same day executed a receipt in full upon the said bond and mortgage, and also a discharge of the same."

The court also found as a question of law that the discharge of said mortgage, executed by Elijah Smith March 31, 1865, became operative and effective as a full and legal discharge of the said mortgage, by the appointment of Elijah Smith in April, 1877, as administrator of the goods and chattels and credits of Minorris Smith the mortgagee, and that thereupon and thereby said mortgage became and was legally satisfied and discharged, and dismissed the complaint, without costs against the plaintiff.

At the time the discharge was executed the plaintiff was a minor of the age of fifteen, and the court found as a fact that she never received any portion of the moneys due upon the bond and mortgage. The widow of the deceased and Morgan Smith are now both deceased, and the plaintiff and defendant Elijah Smith, are their only next of kin.

*Vandenburg & Saxton*, for the appellant.

*Thomas Robinson*, in person, respondent.

BARKER, J.:

By virtue of the letters of administration which were granted to Elijah Smith, he became vested with the legal title of all the personal estate of the deceased, and had the right and power to collect all debts and discharge mortgage liens.

The statute requires that the inventory to be made under the direction of the administrator, shall contain a particular statement of all bonds and mortgages, notes and other securities, for the payment of money belonging to the deceased, which are known to such executor or administrator. And also that all moneys which have come to the hands of the administrator, and if none shall have come to his hands the fact should be so stated in the inventory.

The money unpaid upon the bond and mortgage in suit, if any, became a charge against him upon his appointment, and should have been embraced in his accounts as administrator, and he was the proper person to discharge the mortgage lien by executing a satisfaction thereof sufficient for that purpose, and to entitle it to become a matter of record.

The appointment of a debtor as administrator of the estate of a deceased creditor, does not discharge the debtor from his obligations to pay and account for the debt, but it does discharge the right of action thereon at law, for the reason that he cannot in his representative capacity maintain an action against himself as a debtor to the estate. He is therefore the proper person to discharge liens of this nature, by executing a proper instrument. (*Ely* v. *Scofield*, 35 Barb., 330.)

If, however, an administrator should be removed from his trust without, in fact, accounting for the moneys due from himself to the estate, the administrator *de bonis non* could, beyond all doubt, maintain all remedies which the law gives for the collection of debts against the debtor, upon the original obligations as they existed at the time of his appointment, as the law merely suspends the right of action while the debtor is vested with the right of administration.

The question before us for adjudication is this, did the discharge of the mortgage, executed by Elijah Smith before his appointment, become valid and effective upon his receiving letters of administra-

tion? If it ever became valid to accomplish the purpose for which it was intended, it remains so now. This plaintiff does not seek to set it aside as fraudulent, but she insists that it never became valid and operative as against the estate of the mortgagee.

Letters of administration, when properly granted by the appropriate tribunal, have relation to the time of the death of the intestate, and legalize all of the intermediate acts of the administrators. After being clothed with the authority thus bestowed upon him, he is not permitted to question the validity of his own agreements and contracts, which he may have entered into in good faith prior to his appointment, concerning the property and debts of the intestate.

The effect of this rule of law is very broad, and is so applied as to confirm and legalize the acts which he may have done, as administrator *de son tort*, both for and against himself.

Without the protection of this rule of law, great wrong and injustice would at times be done to innocent persons, trading and dealing with an individual in the actual possession of the assets belonging to the estate of the deceased person.

By a strict enforcement of the rule, no injury or loss can come to those interested in the estate, which might not have happened to them if administration had been granted before any interference had taken place by the person who is afterwards appointed administrator. Upon his appointment he becomes charged in his representative capacity the same as if his dealings with the estate had occurred after he was vested with the legal right, and the sureties on his bond are liable to the same extent as their principal.

In *Priest* v. *Watkins* (2 Hill, 225), one of two administrators before letters granted, having a note in his possession belonging to the intestate, received pay thereon from the debtor, and this act was held to bar a suit by the administrators after their appointment.

In *Vroom* v. *Van Horne* (10 Paige, 549), a foreign administrator not having sued out letters in this State and not being authorized to act here in her representative capacity, did compromise, release and discharge mortgage securities; afterwards she applied for letters to be issued to herself, and they were so issued. She then commenced suit in equity, in her representative capacity, to set aside the com-

promise and release and to foreclose the mortgages. The Chancellor held that as the compromise and release were effected in good faith, so far as the mortgagors were concerned, the administrator was estopped from insisting that she had no right to receive the money and execute the release.

In *Gottsberger* v. *Taylor* (19 N. Y., 150), it was held that the sureties of an administrator were liable for the money belonging to the estate received by him before his appointment.

In the following cases the general propositions which have been stated are fully affirmed : *Walker* v. *May* (2 Hill Ch. [S. C.], 23) ; *Curtis* v. *Vernon* (3 Durnf. & East, 590) ; *In the Matter of Faulkner* (7 Hill, 181) ; *Rockwell* v. *Saunders* (19 Barb., 473) ; *Bellinger* v. *Ford* (21 id., 311).

The administrator Elijah Smith, before he was appointed, did execute a formal discharge of the bond and mortgage in suit, reciting in the same that the mortgage was redeemed, paid off and discharged, and delivered the same to Ira L. Snow, who, on that day, became the owner in fee of the premises.

In my opinion, this discharge became valid and effective, and binding on all persons interested in the estate of the deceased upon granting administration to Elijah Smith, one of the persons who executed the instrument of discharge for the purpose of displacing the mortgage lien.

The plaintiff contends against this conclusion, for the reason that when the discharge was executed there was no money in fact paid by Elijah Smith the debtor to the estate, nor was any paid by Mr. Snow, who became the owner of the mortgaged premises, for the specific purpose and object of securing a discharge of the mortgage. At the time of the discharge of the mortgage, Elijah Smith the mortgagor had become interested in the security with the other heirs-at-law of the intestate. All the other persons interested in the payment of this debt joined in the release. It is fair to presume, in view of this circumstance, that Elijah Smith the debtor did pay them a consideration which was satisfactory to them for joining in the discharge. It is not questioned but that the widow and Morgan H. Smith, who were of full age, freely and in good faith executed the discharge. It is thus convincingly established as a fact that the debtor did make a payment from his own funds in some amount to

a portion of the heirs-at-law who were interested in the enforcement of the bond and mortgage.

If this transaction, including the conveyance of the lands by Smith to Snow, had occurred after the letters of administration were granted, there would be no question but that the mortgage lien would have become fully and legally discharged. Although Mr. Snow was not aware of the existence of this mortgage lien when he received his deed from Mr. Smith, the sum which he paid as part of the consideration money in equity may be treated as a payment in discharge of the bond and mortgage. That Smith intended to convey the premises free and clear of this incumbrance must be admitted. That Snow acted upon the supposition that there was no incumbrance upon the property of this nature, cannot be doubted. As against Smith the mortgagor, who had become interested in the security as one of the next of kin, there would be no difficulty in holding, as a matter of fact, that he intended to and did receive, so far as he was concerned, the consideration money as a satisfaction and liquidation of the mortgage debt.

It is conceded by the plaintiff that in equity the mortgage is satisfied against all the persons interested in her grandfather's estate except herself. The contrary could not be contended for with any sense of right and justice. I am of the opinion that upon the appointment of Elijah Smith as administrator, his act discharging the mortgage in full, became effective as against the plaintiff as one of the next of kin of the deceased.

Upon the trial, evidence was given of the admissions made by the widow and Elijah Smith, that the bond and mortgage were satisfied and discharged. This evidence was entirely competent for the purpose of showing that this bond and mortgage should not be enforced in their interest.

Elijah Smith was called as a witness by the plaintiff and was asked the question, if he intended to deliver the bond and mortgage, with the discharge, to Snow at the time he delivered the other papers to him. This evidence was objected to by the defendant, and the objection sustained and the plaintiff excepted.

As the plaintiff contended on the trial that the discharge was never delivered to Snow and the witness did not admit the fact but denied

the same, the ruling excluding the evidence was not erroneous. (*Dillon* v. *Anderson*, 43 N. Y., 236.)

The judgment should be affirmed, with costs.

Present — SMITH, P. J., HARDIN and BARKER, JJ.

Judgment affirmed, with costs.