THEODORE KIRSCH, by MICHAEL J. KIRSCH, his Guardian Ad Litem, and Another, Respondents, v. ORANGE L. TOZIER and Another, Appellants, Impleaded with Others, Defendants.

$\overline{63}$ $\overline{607}$
,143a 390

*Mortgage — held in trust by a general guardian — power to satisfy it prematurely — remedy in equity — constructive notice — what recitals put a subsequent mortgagee upon inquiry — additional allowance.*

Orange L. Tozier, who, in 1873, was appointed general guardian of the three infant children of John Kirsch, in 1875 took from Lester H. Tozier, who had acquired title to certain real estate of John Kirsch, a mortgage in trust for the infants ; payable, one-third of the principal sum secured thereby, at each of three dates, each being the date of arrival at majority of one of the infants; interest, by the terms of the mortgage, was payable annually.

In 1883 Lester H. Tozier conveyed the premises to Orange L. Tozier, who, in 1886, before any of the principal sums secured thereby became payable, discharged the mortgage of record, and subsequently borrowed money from a bank and secured the payment thereof by a mortgage upon the same premises. The abstract of title, upon the faith of which the bank made this loan, described the mortgage of 1875 as being given by Lester H. Tozier and wife to O. L. Tozier, in trust for the minor children of John M. Kirsch, deceased. "Discharged March 9, 1886. E. M. Jennings, Clerk." Then followed a brief statement of its terms and date of record. The bank lent the money in good faith and without any notice of the existence of the L. H. Tozier mortgage, except such notice as the record afforded.

In an action brought in the interest of the infants to reinstate the mortgage:

*Held,* that the trust or trust power created in favor of the infants was valid, and that it imposed upon the trustee a duty which equity would enforce.

That he had neither the right nor the power to satisfy the mortgage of record.

That the recitals in the mortgage were constructive notice to the bank of the irregularity of the discharge, and that it was thereby put upon inquiry.

That inquiry would have shown the fact that the minors would arrive at majority upon the dates when the several portions of the principal became payable, and that, consequently, the satisfaction thereof was an act in contravention of the purpose of the trust.

That where an extra allowance is excessive, because calculated on a sum greater than the value of the subject-matter, the objection should be taken at Special Term. If presented for the first time upon appeal the court will do no more than correct the error in computation.

Appeal by the defendant Orange L. Tozier from a judgment of the Supreme Court, entered in the office of the clerk of the county of Wyoming on the 30th day of September, 1891, among other

things, adjudging a mortgage executed by Lester H. Tozier and wife to Orange L. Tozier, in trust for the infant children of John Kirsch, to be a lien upon the premises described in it prior to a mortgage given by Orange L. Tozier to the Buffalo Savings Bank, and directing a sale under it, with notice of an intention to bring up for review upon the appeal an order entered in said clerk's office September 30, 1891, granting an extra allowance of costs, after a trial before a referee. .

Also an appeal by the defendant, the Buffalo Savings Bank, from the same judgment.

The statement of the abstract of title relative to the mortgage was as follows :

Lester H. Tozier and Nellie, his wife, to O. L. Tozier, in trust for Michael Kirsch and Theodore Kirsch and Peter Kirsch, minor children of John M. Kirsch, deceased.

Discharged March 9, 1886.                    E. M. JENNINGS,
                                                    *Clerk.*

Mortgage dated October 15, 1875, recorded October 23, 1875, in Liber 45 of Mortgages, page 201. Given for $1,000 and interest. Conveys the premises described in abstracts Nos. 4, 6 and 8.

The condition of the mortgage was, so far as material, as follows :

" This grant is intended as a security for the payment of the sum of one thousand dollars to be paid as follows: The sum of three hundred and thirty-three dollars and thirty-three cents on November 13th, 1887 ; the sum of three hundred and thirty-three dollars and thirty-three cents on March 18th, 1891, and the sum of three hundred and thirty-three dollars and thirty-three cents, October 6th, 1892. The interest on the above to be paid annually from the 1st day of April, 1876, according to the condition of a bond this day executed and delivered by the said party of the first part to the said party of the second part; and this conveyance shall be void if such payment be made as herein specified."

*I. Sam Johnson,* for the appellant, Orange L. Tozier.

*Spencer Clinton,* for the appellant, the Buffalo Savings Bank.

*F. C. Peck,* for the respondents.

Macomber, J. :

This action was brought to reinstate a mortgage executed by the defendant Lester H. Tozier and his wife to the defendant Orange L. Tozier, which was made in trust for the plaintiffs, Michael Kirsch and Theodore Kirsch, and for Peter Kirsch now deceased, minor children of John Kirsch, to set aside a discharge of such mortgage executed by Orange L. Tozier, and for foreclosure of the mortgage and sale of the mortgaged premises for the benefit of the persons named as *cestui que trust*.

The lands in question consist of 102 acres situate in the town of Sheldon, Wyoming county, New York, of which John Kirsch died seized in the year 1872. On the 8th day of January, 1873, the defendant Orange L. Tozier was appointed general guardian of the infant children, Michael J., Theodore and Peter Kirsch. At the time of his death John Kirsch owed debts which, with the incumbrances upon his real estate, exceeded the value of both his personal and real property. Orange L. Tozier and Elizabeth Kirsch, the latter the widow of the deceased, were appointed administrators of the estate of John Kirsch. Subsequently to this it was agreed between them and Lester H. Tozier, a son of Orange L. Tozier, that they should purchase the mortgages then existing on the farm, foreclose them, and procure a title to the land, and convey the same to Elizabeth Kirsch, who should, in turn, by mortgage thereon, secure to Lester H. Tozier the amount paid by him, and give a mortgage upon the farm of $1,000 to these three children. This arrangement was carried out, except that upon a sale of the lands, either by direct purchase at the sale or by deed coming immediately from the purchaser, Lester H. Tozier, became the owner for the consideration, in all, of $1,131.56. Thereupon it was further arranged between Orange L. Tozier and the widow, Elizabeth Kirsch, that the widow should convey to the then holder of the title, Lester H. Tozier, all her interest in the lands to which she was entitled as widow, and that a mortgage should be executed by Lester H. Tozier to Orange L. Tozier, in trust for the three children, in the sum of $1,000, one-third thereof payable to each of the three children when he should arrive at age, with interest in the meantime. Having received the deed from Mrs. Elizabeth Kirsch, Lester H. Tozier and

his wife executed to Orange L. Tozier, in trust for Michael Kirsch, Peter Kirsch and Theodore Kirsch, the mortgage in question, dated the 15th day of October, 1875, expressing a consideration of $1,000, payable as follows: The sum of $333.33 November 13, 1887; the sum of $333.33 March 18, 1891, and the sum of $333.33 October 6, 1892, with interest payable annually from the 1st day of April, 1876. This instrument was delivered to Orange L. Tozier, who caused the same to be recorded in the proper clerk's office on the 23d day of October, 1875. The mortgagee and trustee paid the interest upon this mortgage to Elizabeth Kirsch, the mother of the children, in pursuance of a previous arrangement, until the spring of 1886, since which time no part of the principal or interest has been paid thereon by the trustee for the benefit of either of the children.

On the 3d day of September, 1883, Lester H. Tozier and his wife executed and delivered a deed of the farm to Orange L. Tozier, at a consideration, as expressed in the deed, of $4,000, and the record title of such farm has since been in Orange L. Tozier. After acquiring this title, and on the 19th day of February, 1886, Orange L. Tozier executed and acknowledged a discharge of the mortgage, and caused the same to be recorded in the proper clerk's office on the 9th day of March, 1886. On the 27th day of January, 1886, before the execution of such discharge, Orange L. Tozier applied to the defendant, the Buffalo Savings Bank, for a loan of $2,000 upon this farm, which application was granted on the 1st day of February, 1886, and on an examination of the title of such farm, submitted to the officers of the bank, there was an abstract certified by the proper clerk of Wyoming county to the effect that Orange L. Tozier appeared to be the owner of the farm. On such abstract a memorandum of the mortgage, sought by this action to be reinstated, described the mortgage simply as being given for $1,000 and interest, having written across the face of the memorandum as follows: "Discharged March 9, 1886, E. M. Jennings, Clerk." The defendant, the Buffalo Savings Bank, at the time of taking its mortgage and advancing the money thereon, had not, either through any of its officers or attorneys, any knowledge or notice of the existence of this mortgage now sought to be reinstated in this action, except the memorandum on the abstract of title of its discharge, and the constructive notice given by the record of such mortgage.

Under these facts, we think the learned referee was correct in granting to the plaintiffs the relief sought by this action. By the terms of this trust mortgage there was disclosed by the record thereof in the county clerk's office a notice to all persons that it had been executed for the benefit of the three minor children of John M. Kirsch, deceased. That this trust or this trust power (1 R. S., 729, § 58) was valid admits of no doubt, for the beneficiaries were minors. Its execution or non-execution did not depend on the will of the mortgagee; on the contrary, his obligation was imperative and imposed a duty on him the performance of which may be enforced in equity for the benefit of the parties interested. (1 R. S., 734, § 96.) It was not competent for Orange L. Tozier to repudiate the trust; on the contrary, he was bound to carry out the same faithfully. After the mortgage had once taken effect it became irrevocable and its operation could not be affected by any subsequent act of the mortgagee, by way of repudiation, in discharging the lands from the lien of the mortgage, or in any other way impairing the rights of his wards. (*Wallace* v. *Berdell*, 97 N. Y., 25.) The question, therefore, as against the appellant, Orange L. Tozier, is not difficult of solution upon the merits of the transaction.

A point, however, is made by his learned counsel that the remedy adopted in this case was not the correct one; that the plaintiff should have made a demand upon the trustee that he foreclose the mortgage, or, failing in that, that he should be called to an account and should be required to pay only the difference between the sum that he had apparently deprived the *cestui que trust* of and the actual moneys expended by him in their behalf. But we cannot follow their lead in the direction of this argument. It would be an expression of a fatuous confidence to expect that this trustee, after having discharged of record the mortgage which he held in trust for infants, thus violating to the full extent of his ability the trust imposed in him, should himself be intrusted by the court with the duty of restoring the mortgage to its proper record and of vindicating the integrity of the trust which he had so wantonly violated. The case must, therefore, be treated in respect to the remedy on the theory that the trustee has no disposition, and, under the circumstances, no power, to repair the injury to his wards, which he has deliberately wrought, and the case must be permitted to proceed against him *in invitum.*

In respect to the appeal taken by the Buffalo Savings Bank a different question is presented. The provision for the payment of the principal of the trust mortgage was sufficient, in our judgment, to put any person examining the records upon inquiry, and on such inquiry the fact would have been easily ascertained, even though imperfectly disclosed in the mortgage itself, that the minors would arrive at their majority, respectively, at the very dates when these several sums of principal were made payable. The learned referee has charged this appellant with such constructive notice of the terms of this trust mortgage and with constructive notice of the irregularity of its discharge, placing his decision mainly upon the case of *McPherson* v. *Rollins* (107 N. Y., 316). In that case a person, for the purpose of making a provision for his daughter and two grandchildren, conveyed to his daughter certain lands and received from her a mortgage back thereon, which stated that it was given as security, among other things, for the payment to him or to the general guardian of the plaintiff in that action, one of the grand-daughters, of the sum of fifty dollars annually for the benefit of that plaintiff until she should arrive at the age of fifteen years, and thereafter the sum of one hundred dollars until she should arrive at the age of twenty-one years. Both instruments were recorded. The mortgagee thereafter, and without consideration, executed a certificate of satisfaction of the mortgage, which was recorded, and a memorandum was made in the margin of the record of the mortgage to the effect that it was discharged of record. Subsequently the lands were conveyed for a full and valuable consideration to a grantee who had no actual notice of the execution of the trust mortgage. In an action to foreclose that mortgage, which had actually been discharged, it was held that a valid and irrevocable trust was created by it, and as the same had in no way been renounced by the *cestui que trust*, the discharge was in contravention of the trust, and consequently void. It was there further held that the grantee was chargeable with notice that the plaintiff had a beneficiary interest under the mortgage, and the satisfaction thereof was an act not in the execution of the trust, but beyond the power of the trustee to perform. DANFORTH, J , in delivering the opinion of the court, said : " The important inquiry before the referee was, whether the defendants had any notice, actual or constructive, of the plaintiff's rights, or of the character in which

Deming held the mortgage. His finding that they had no actual notice reduces our inquiry to the effect of the recording act. As intending purchasers, they must be presumed to investigate the title and to examine every deed or instrument forming a part of it, especially if recorded. They must, therefore, be deemed to have known every fact disclosed (*Acer* v. *Westcott*, 46 N. Y., 384), and every other fact which an inquiry suggested by those records would have led up to. Thus they are plainly chargeable with notice of the mortgage, and of all the facts of which the mortgage could inform them."

That cause was tried before the venerable jurist, the late ADDISON GARDINER, and was the last important case decided by him; and of his opinion then delivered, which has been furnished to us, and upon which his decision in that case was affirmed by this court, it is not too much to say that, in grasp of facts and of law, and in its vigorous judicial style, it shows no diminution of those rare judicial powers exhibited by him in his first opinion delivered thirty-five years before, contained in the first appeal in the first volume of the Court of Appeals reports. Inasmuch as that opinion has never found its way into the reports, and as it expresses accurately our views of the case now before us, a quotation from it may not be deemed out of place. Judge GARDINER said: " The next important question presented is whether these defendants had, at the time of their purchase, constructive notice, or, what is the same in effect, notice to put them on inquiry as to the trust in question. The leading purpose of the recording acts, it is supposed, was to enable purchasers of real estate, and those having liens upon it, to protect themselves and the public against the frauds of previous owners and the claims of subsequent purchasers and incumbrancers, by spreading upon the records of the appropriate county a statement of their respective claims or their discharge, which should constitute a notice to all persons obtaining or seeking to obtain an interest in the lands designated of the matters contained in such statement. These acts, as construed by our courts, require due vigilance upon the part of those giving this notice, and of those affected by it. The one must record his claim and the other search for it with all reasonable expedition and thoroughness. (*Heilbrun* v. *Hammond*, 13 Hun, 479 ; *Viele* v. *Judson*, 82 N. Y., 32, and cases ; *Ely* v. *Scofield*, 35 Barb., 330.)

In the case last cited the mortgage had been assigned, but the assignment was not recorded; then the mortgage was discharged by the only person apparently authorized to secure payment, and the discharge duly recorded; due search disclosing no defect in the title, a purchaser in good faith relying upon the discharge was protected against the claim of the assignee and the lien of the mortgage. In *Viele* v. *Judson* (*supra*) the assignment was first recorded and the mortgagee subsequently executed a discharge, which was also recorded; the purchasers relied upon the discharge without search for the assignment; *held*, that the record which showed the discharge showed also its invalidity. The same doctrine for like reasons is affirmed in 13 Hun. In view of these decisions, what is the situation of these parties? The mortgage of the 14th of July was duly recorded with the deed to which it referred, and through which the Rollins derived title to these premises. The mortgage declared the trust, the power of the trustee, the age of the *cestui que trust*, and consequently the inability of the trustee to discharge the investment in their favor and that of the infants to sanction such change, even if desirable" (citing authorities). "Having given public notice of the claim of their children on the records in the clerk's office, those who acted in their behalf had done all in their power to protect their interest and secure the public against the fraud of former owners and mortgagees. The Rollins, on the other hand, had concluded their purchase without a personal examination to be made. They undoubtedly believed they had secured a good title, a belief induced mainly by their confidence in those with whom they dealt, and partially confirmed by a defective search, procured by Mr. Janes and shown to them, in which the Gray and Stevens mortgages of the fourteenth of July were omitted as though never executed or recorded. Such an omission from a paper purporting to give a history of matters affecting the title to lands gathered from the records was erroneous and misleading. It seems in this case to have been exceptional, also, since a subsequent mortgage to one Allen, although discharged, is noted and the facts stated as they should be. The notion that a discharge expunges the mortgage and leaves the record *tabula rasa* is absurd. The record always remains, but whether as evidence of an existing lien or not will depend upon the character of the certificate and the authority of the person assuming to execute it. In

this case the whole record, if diligently examined, would disclose the trust, the age of the beneficiaries, and that Deming, as their trustee, could not discharge the lien of the mortgage to the prejudice of minor children, while he possessed full power in that respect as to his own annuity. As in *Viele* v. *Judson* (*supra*), the record which showed the discharge, if followed out, would prove its invalidity. The records invited investigation; the discharge pointed directly to the record of the mortgage, book and page, and that record in turn by the memorandum upon it referred back to the certificate. The inquirers had only to read and learn all that was necessary for their protection. The defendants failed to do this; and between these parties, both innocent, which shall suffer? The daughters, who used every measure permitted by law with more than ordinary diligence to apprise these purchasers of the trust in their favor, or the defendants, who neglected all the usual precautions, and risked their investment upon such outside information as could be obtained without expense or trouble."

We think, therefore, that the referee did well to follow the decision of *McPherson* v. *Rollins*, and that such authority, under the facts disclosed, leads to an affirmance of the judgment entered upon his report.

In respect to the appeal by the defendant Orange L. Tozier from the order granting an additional allowance of costs, under section 3253 of the Code of Civil Procedure, on the ground that the case was difficult and extraordinary; it appears from the referee's report that the value of the subject-matter involved in this action was $1,323, being the amount due on the mortgage, and that, consequently, the amount of one hundred dollars was slightly excessive of the limitation of five per cent imposed by the statute. It was the duty, we think, of the appellant's counsel to raise this question at the Special Term, which he failed to do. It appears, by the order entered, that the only objection made to the application for an additional allowance of costs was that the plaintiffs were not entitled to any additional allowance. A rigid application of the rule would lead us to an affirmance of this order upon the ground that the act of the appellant, at the Special Term, probably led the court into the error of allowing too much under this section of the Code. But our modification of the order ought not, under the circum-

stances, to affect the question of costs of this appeal. This order is modified by allowing, instead of one hundred dollars, the sum of sixty-six dollars and fifteen cents, and as so modified affirmed.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment and order appealed from affirmed, with costs, except that the additional allowance of costs is reduced from one hundred dollars to sixty-six dollars and fifteen cents.