Filed May 27, 1884.

———————◆———————

No. 7894.

## REEVES, GUARDIAN, v. HAYES ET AL.

MORTGAGE.—*Assignment.*—*Recording.*—*Notice.*—Prior to July 2d, 1877, R. S. 1881, section 1093, there was no law authorizing the record of the assignment of a mortgage, and such record, if made, would not have been notice to subsequent purchasers or mortgagees in good faith. NIBLACK and ZOLLARS, JJ., dissenting.

SAME.—*Release.*—*Priorities.*—After assigning the debt secured thereby, a mortgagee has no power to enter satisfaction of a mortgage, and such entry of satisfaction by him on the margin of the record in the manner provided by statute, R. S. 1881, section 1090, will not give priority to a subsequent mortgagee in good faith without actual notice of the assignment of the debt. *Ayers* v. *Hays*, 60 Ind. 452, overruled. NIBLACK and ZOLLARS, JJ., dissenting.

From the Rush Circuit Court.

*G. C. Clark, J. W. Brown, G. B. Sleeth, J. W. Study* and *W. A. Cullen,* for appellant.

*L. Sexton, C. Cambern, J. H. Mellett, E. H. Bundy* and *J. M. Morris,* for appellees.

ELLIOTT, C. J.—John S. Hayes executed to William F. Reeves, guardian, a mortgage to secure the payment of three promissory notes evidencing the unpaid purchase-money of land sold to him by the guardian, and dated September 1st, 1873; afterwards Hayes sold the land to Len M. Copeland, who executed nine promissory notes for the purchase-money and also executed a mortgage; three of these notes were paid; prior to November 6th, 1874, one of them, number four in order of priority, was assigned to the First National Bank of Newcastle; on the day named Hayes assigned to Reeves, guardian, the notes, in order of priority numbers six

and eight, in exchange for the first notes executed by the former to the latter, and delivered, at the time, the mortgage executed by Copeland; on the 7th day of June, 1875, seven months after Reeves, guardian, had acquired the notes and mortgage by assignment, his assignor and original debtor, executed a release to Copeland which was placed on record; after the execution of this release and its entry of record, William Wilson lent to Copeland $2,000, and took as security a mortgage on the land bought of Reeves, guardian. The contest is as to who has the prior lien Wilson or Reeves and the Bank of Newcastle, the court below holding that Wilson's lien was superior to that of the appellants.

Prior to July, 1877, there was no law in force in the State authorizing assignments of mortgages to be recorded. This was the ruling in *Hasselman* v. *McKernan*, 50 Ind. 441, and while some of those who concur in this opinion regret that decision, we feel bound by it, for the reason that it has never been disapproved, but, on the contrary, has been repeatedly approved and followed. *Coombs* v. *Carr*, 55 Ind. 303; *Dixon* v. *Hunter*, 57 Ind. 278; *Cain* v. *Hanna*, 63 Ind. 408; *Hosford* v. *Johnson*, 74 Ind. 479. There is, therefore, an unruffled current of decisions upon this subject, but there is more, the Legislature accepted the court's construction of the statute and passed an act providing for the recording of assignments, so that we have the concurrent action of two of the great departments of government. R. S. 1881, section 1093.

It is perfectly well settled that notice is never imparted by the recording of an instrument which the law does not authorize. In *Deming* v. *State, ex rel.*, 23 Ind. 416, it was held that a mortgage, not acknowledged according to law, could not be legally recorded, and that, although actually entered of record, it did not constitute notice, the court, by FRAZER, J., saying: "We suppose there can be no question, that the fact that the mortgage was actually recorded, without being acknowledged or approved, as the statute required to entitle

it to be recorded, is not notice." If it be true, as undeniably it is, that such a registration is not notice, much stronger the reason for holding the record not notice where there is no law authorizing the recording of the instrument. That is the case here, for there is not merely a defective execution of an instrument, but an absolute absence of authority for recording it. *Caldwell* v. *Williams*, 1 Ind. 405; *Brown* v. *Budd*, 2 Ind. 442; *Taylor* v. *City of Ft. Wayne*, 47 Ind. 274; *Westerman* v. *Foster*, 57 Ind. 408. Judge Story says, in speaking of the registry of instruments: "If they are not authorized or required to be registered, or the registry itself is not in compliance with the law, the act of registration is treated as a mere nullity." 1 Story Eq., section 404.

The appellants could not have done more than they did do. The recorder could not have recorded the assignment without a violation of his duty, and even if he had actually recorded it, his action would have been a mere nullity. There can be neither fault nor negligence where one does all the law permits him to do. *Purdy* v. *Huntington*, 42 N. Y. 334 (1 Am. R. 532). See opinion, SUTHERLAND, J., 1 Am. R. 541. It was impossible for the appellants to have given notice, for there was no way in which it could be done. They acquired rights in good faith, have been guilty of no fault, they are equal in equity, and prior in point of time, and we know of no principle which will warrant the courts in depriving them of their rights.

The contesting parties in this case are equal in equity, for both parted with value, and the appellants, as we have seen, were not, in anywise, in fault; therefore the maxim, "Where there are equal equities, the first in order of time shall prevail," must be the governing rule. 1 Pom. Eq., section 413.

The authority of the mortgagee to release the mortgage terminated with the assignment. A recent writer thus states the rule: "After an assignment of the mortgage note the mortgagee can not discharge the mortgage if the note be negotiable and it be assigned to an innocent party, before due

and for a good consideration, although the note be without any consideration; and satisfaction so entered will be vacated by a court of equity." At another place this author says: "The notes in such a case become the evidence of the mortgagee's authority to enter satisfaction of the lien." 1 Jones Mort., section 814. In *McCormick* v. *Digby*, 8 Blackf. 99, it was held that the mortgagee had no authority to enter satisfaction after assignment, and this decision has received uniform approval from the text-writers. 4 Kent Com. 194; 1 Hilliard Mort. 230; 2 Washb. R. P. 129; Thomas Mort. 418; 1 Jones Mort., section 814.

The release entered by the mortgagee after assignment of the notes was ineffective, and the only ground on which the assignees can be even plausibly said to have lost their rights is that of negligence. But it is legally impossible to conceive them guilty of negligence, for they had done nothing wrong, and had omitted nothing that they could do. If there had been a law authorizing the recording of assignments, then a very different question would face us.

Promissory notes are articles of commerce, and pass from hand to hand by barter and sale. The transfer of a note carries the mortgage, for the former is the principal and the latter the incident. This is in accordance with the universal rule that the grant of the principal thing carries all the incidents. *Matthews* v. *Wallwyn*, 4 Vesey, 118; *Jackson* v. *Blodget*, 5 Cowen, 202; *Green* v. *Hart*, 1 Johns. 580; *Johnson* v. *Hart*, 3 Johns. Cas. 322. In *Hubbard* v. *Harrison*, 38 Ind. 323, it was said: "The assignment of a mortgage, independent of the debt which it is given to secure, is an unmeaning ceremony." It has always been the law of this State that the assignment of the note carries the mortgage. *Blair* v. *Bass*, 4 Blackf. 539. In *Hough* v. *Osborne*, 7 Ind. 140, the court said: "The only thing easily perceivable as to the transfer of the mortgage security without the notes, was its futility." *Garrett* v. *Puckett*, 15 Ind. 485; *Gower* v. *Howe*, 20 Ind. 396.

The assignment of a note negotiable by the law merchant carries the mortgage security, and in the hands of a *bona fide* holder the security is protected to the same extent as the note itself. *Gabbert* v. *Schwartz*, 69 Ind. 450; *Bayless* v. *Glenn*, 72 Ind. 5; *Carpenter* v. *Longan*, 16 Wall. 271; 1 Dan. Neg. Inst. 834; Clemens Corp., sec. 158.

Promissory notes may be transferred by delivery. *Hancock* v. *Ritchie*, 11 Ind. 48; *Speelman* v. *Culbertson*, 15 Ind. 441; 1 Dan. Neg. Inst., section 729. So may a mortgage. 3 Pomeroy Eq. Jur., section 1210; 1 Jones Mort. 813. But here there was a written assignment of the notes and a delivery of the mortgage. The appellants by the assignment to them of the notes acquired title, and as they acquired the notes they also acquired the mortgage securing them. It would not have added to the strength of their title to have taken a written assignment of the mortgage, because, under the law as it stood at the time, no assignment could have been admitted to record. The fact that no written assignment was taken does not impair their rights or show them to be in fault, for the reason that had they taken one it would not have enabled them to give constructive notice by registry.

Cases decided in States where the law provides for the registry of assignments can not be in point in a State where there is no law authorizing them to be recorded. This is the essential difference between many of the cases cited in argument and the one at bar. We must turn to the common law for information, because, as there is no statute authorizing assignments to be recorded, we must look to the rights of the parties as they existed in the absence of such statutes. The case of *James* v. *Morey*, 2 Cowen, 246, was very ably argued, and the subject very carefully considered. Opinions were read by the Chief Justice and several other members of the court, and it was held that the assignee took absolute title as against subsequent mortgagees and *bona fide* purchasers, for the reason that there was no law authorizing the assignment of a mortgage to be recorded. WOODWORTH, J., in the course of

his opinion, said: " I have not met with any case that places the rights of the assignee on other or different ground, or that gives countenance to the suggestion, that the assignee must, at his peril, give notice to a subsequent assignee, or purchaser from the mortgagee. Such a doctrine is not only most unreasonable in itself, but would shake the foundation of security by mortgage assignment, hitherto deemed equal to that of the original mortgage, with the exceptions I have stated. It would, in fact, be no security, beyond the responsibility of the person making the assignment; for the assignee has no means of ascertaining how often, and to whom, the mortgagee may have subsequently assigned. Such notice is not necessary for the protection of a subsequent purchaser. The registry of the original mortgage is notice to him of its existence. If he will deal without asking for the mortgage or requiring it to be cancelled, he comes, without a semblance of equity, to demand that the prior *bona fide* assignee shall be postponed to his claim." Again, the judge says: " But is this pretended hardship anything more than every purchaser of land was liable to, since the existence of this government, until the last act requiring deeds to be recorded? Every grantor had the power of conveying a second time, and no doubt the power was sometimes exercised by fraudulent individuals. It was never seriously urged that the second purchaser had any remedy against the first purchaser, because his deed was not recorded or notice given." SUTHERLAND, J., said: " If I have been successful in showing that the assignee is not bound to record the assignment, and that a voluntary registry would not be constructive notice to any person, then it necessarily follows, that whatever notice is required to be given must be actual and not constructive; for I know of no other act which can be supposed the assignee was bound to perform, from which notice could be inferred, except the act of registering. Now it is utterly impossible for the assignee of a mortgage to know with whom the mortgagee may subsequently deal in relation to the mortgaged

premises." Chief Justice SAVAGE said: "I know of no law requiring the assignment of a mortgage to be recorded. If notice of the assignment is not given to the mortgagor, he is protected in any payments he may make to the mortgagee. And this is the extent of the risk run by the assignee, who neglects to give notice of the assignment."

A second mortgagee who finds on record a mortgage receives notice of its existence, and he must ascertain whether the release was executed by one having authority, for he is bound to know, as matter of law, that notes secured by mortgage are transferable as articles of commerce, and that, after transfer the mortgagee has no right to release the mortgage. He is bound, also, to know that he can obtain no notice from the record, because the law does not authorize the recording of assignments, and that he must, therefore, look elsewhere for information.

Where notice can not be given by registry, then one who takes an interest in mortgaged property must ascertain that the person assuming to release the mortgage is the holder of the notes which it secures. It is unquestionably the law that where notice of title can not be given by record, the person seeking to secure rights must ascertain who is the owner of the mortgage, by tracing the notes to the hands of the assignees. It is said by Jones that " Purchasers are bound to know that if the mortgagee has endorsed the notes before maturity to a *bona fide* holder, the mortgagee has no longer authority to satisfy the mortgage; and therefore they are bound to ascertain whether the mortgagee still held the notes at the time he discharged the mortgage." 1 Jones Mort., section 814. In *Wolcott* v. *Winchester*, 15 Gray, 461, it was said: "As a purchaser, he must have known that the possession of the debt was essential to an effective mortgage, and that without it he could not maintain an action to foreclose the mortgage. The not finding it in the possession of the mortgagee, and not stipulating for any transfer of such debt, are circumstances that should estop him from setting up any title against

a *bona fide* purchaser of the debt, who had possession of the bond and an assignment of the mortgage in due form to vest the legal estate in him as against the assignor, and only defective as to any others, in not being recorded." The case of *Kellogg* v. *Smith*, 26 N. Y. 18, holds that the purchaser of a bond and mortgage, who fails to require the production of the bond, is chargeable with notice of defects in his assignor's title. A much stronger case than those cited, or the one at bar, is that of *Burhans* v. *Hutcheson*, 25 Kan. 625, S. C. 37 Am. R. 274, where it was held that one who paid a commercial note secured by mortgage, without ascertaining that the note had not been transferred, did so at his peril, even though the statute authorized the recording of assignments of mortgages.

It must be held that the purchaser of a note secured by mortgage, who can not give record notice of his rights, is entitled to protection as against subsequent encumbrances, or we must deny the negotiable value of such instruments. It is well said by Mr. Daniel, in maintaining the soundness of the rule we have stated, that "The security of the mortgage may impart to the paper its marketable value, as in the case of corporation coupon bonds, which rests mainly upon the basis of such security for their payment. And to sever the basis of credit from the obligation to pay would most frequently defeat the negotiation of these, or similar instruments, at anything like their par value." Dan. Neg. Inst., sec. 834.

It is impossible for one who acquired title to a mortgage by assignment prior to the act of 1877, to give notice of his title to all who might afterwards become interested in the mortgaged premises; all that he could do would be to take an assignment of the note and mortgage. On the other hand, it is both possible and practicable for one about to take a second mortgage, to ascertain whether the original mortgagee had authority to execute a release. No principle of law or equity will justify a holding that one who has omitted inquiry, where a duly recorded mortgage suggests inquiry and

proclaims that action without inquiry is hazardous, shall be preferred to one who has acquired rights in good faith and has omitted nothing which the law permitted or required at his hands. *Campbell* v. *Vedder*, 3 Keyes (N. Y.) 174.

The case of *Trustees, etc.,* v. *Wheeler*, 61 N. Y. 88, is not in point, because the person in whose favor the mortgage was released had acquired an interest in the land prior to the assignment of the non-negotiable bond secured by the mortgage. The case of *Bank of the State* v. *Anderson*, 14 Iowa, 544, is confessedly against the weight of authority, and is the decision of a divided court, followed in the subsequent case of *McClure* v. *Burris*, 16 Iowa, 591, with evident reluctance, and yielded to upon the ground of *stare decisis*. More than this, the recent case of *Bowling* v. *Cook*, 39 Iowa, 200, clearly shows that it is sustainable on the ground that the law authorized the recording of the assignment. In proof of this we quote the following: " The subsequent mortgagee would not be affected by an assignment of a prior mortgage unless charged with actual notice or the assignment has been duly recorded. Following this doctrine, we hold that if the party executing the second mortgage appear from the record to be the one to whom the first was executed and its assignment is not shown by the record, the equities of the second mortgage are superior to the first." It is apparent, therefore, that the doctrine of the Iowa courts does not apply to a case where there is no law authorizing the recording of the assignment. *Summers* v. *Kilgus*, 14 Bush, 449, goes off on two points, one that the mortgage was executed to secure an antecedent debt, the other that the statute of Kentucky authorizes the recording of assignments of mortgages.

Of the case of *Fox* v. *Wray*, 56 Ind. 423, it is only necessary to say that the point here in judgment was there neither discussed nor decided. *Ayers* v. *Hays*, 60 Ind. 452, does decide this question and against the views here declared, but it is evident that in that case the court proceeded on the

theory that assignments were entitled to record. We quote
from the opinion the following: " In the case at bar, there
was nothing on record, when Hays and Butcher purchased
the mortgaged property, indicating that Campbell had parted
with the note in suit, or that it remained unpaid, or that
Campbell was not fully authorized to enter satisfaction of the
mortgage, or had made any mistake in such entry of satisfac-
tion." The whole force of the reasoning in that case is par-
ried when it is considered that as there was no statute au-
thorizing the recording of such instruments, the registry
would have been an idle and unmeaning act. There are
cases in our reports fully and directly sustaining the doctrine
we now lay down. Directly in point is the case of *Dixon* v.
*Hunter*, 57 Ind. 278, where the precise question was decided,
and was the one on which the case turned. The language
used in that case was very strong, the court saying that the
proposition was too clear for argument. The third point
decided in *Lapping* v. *Duffy*, 47 Ind. 51, is thus discussed :
"It is also said, that it was claimed by the incumbrancers
whose liens accrued after the entry of satisfaction of the mort-
gage was made by McClung, that they ought to be protected
as purchasers for value, and without notice. We do not think
so. According to the allegations of the complaint, McClung,
at the time he entered satisfaction of the mortgage, had no
interest whatever in the debt, and made the entry without law-
ful right or authority. It is impossible that his act could, un-
der these circumstances, be binding or obligatory on Lapping
and Kerr, or could in any way affect their rights." The case
cited again came before this court, and although the former
decision was expressly referred to, no question was made as
to its soundness. The opinion delivered on the second appeal
does, indeed, declare a principle which has an important bearing
on the present case, for it declares that the recording of an in-
strument not required by law to be recorded is not notice. *Lap-
ping* v. *Duffy*, 65 Ind. 229. The case of *Lapping* v. *Duffy*, 47
Ind. 51, has been cited with approval in other cases than *Dixon*

v. *Hunter, supra,* among them, *Marshall* v. *Stewart,* 65 Ind. 243, *Teal* v. *Hinchman,* 69 Ind. 379, *Evansville, etc., Co.* v. *State, ex rel.,* 73 Ind. 219 (38 Am. R. 129), *Hunt* v. *Elliott,* 80 Ind. 245 (41 Am. R. 794); and *Dixon* v. *Hunter, supra,* is also cited in the first of these cases. On the other hand *Ayers* v. *Hays, supra,* does not, so far as we can ascertain, appear to have been even cited in any subsequent case. *Burton* v. *Reagan,* 75 Ind. 77, did not involve the question, for in that case the answer averred that the appellants had notice of the rights of Hadley before the notes were assigned to them, and the question could not have possibly arisen. The case of *Etzler* v. *Evans,* 61 Ind. 56, is in harmony with *Dixon* v. *Hunter, supra,* rather than with *Ayers* v. *Hays, supra.* It was said in that case by NIBLACK, J., speaking for the court: "Did the statement in writing, which the defendant John F. McClellan attached to the mortgage record, alleging that the consideration upon which the entry of satisfaction of the mortgage had been made had failed, operate as constructive notice of the matters contained in such statement? We are of the opinion that it did not. It was not an instrument which the law authorized to be recorded," and "no one is bound to take notice of the record of it." It seems to us that if a statement attached to the entry of satisfaction, actually although not rightfully on the record itself, can not be regarded as impairing rights or putting persons in default, certainly no one can be in default for not recording what, in legal contemplation, it was utterly impossible for him to record. We feel that it is our duty to follow *Lapping* v. *Duffy, supra,* and *Dixon* v. *Hunter, supra,* because they are in harmony with our own decisions, and because they are supported by sound principle.

It will be observed that the case of *Hasselman* v. *McKernan, supra,* has never been questioned, and that there is an unbroken line succeeding it, while, as between *Ayers* v. *Hays, supra,* and *Dixon* v. *Hunter, supra,* there is irreconcilable conflict, and we must choose one or the other

of them.   There is no other alternative.   If we overrule *Hasselman* v. *McKernan, supra,* we carry down many cases and overturn the construction of a statute acted upon by the Legislature ; while if we follow *Lapping* v. *Duffy, supra,* and *Dixon* v. *Hunter, supra,* and reject *Ayers* v. *Hays, supra,* we simply elect between two contradictory lines of decisions, and we think it far better to make choice of one of the two conflicting lines than to introduce more doubt and confusion by overruling *Hasselman* v. *McKernan, supra.*   In the one case, we should unsettle what is harmoniously settled ; in the other, we elect to follow one of two contradicting views, and disturb no settled and harmonious line of adjudications.

The form which the case assumes in this court by the method of appeal, and by the character of the assignment of errors, precludes us from determining the equities of the appellants as between themselves, but the issues will have to be reopened and the entire proceedings changed and pleadings remodelled, for the error in adjudging Wilson's lien to be the prior one pervades the entire cause.

Judgment reversed, with instructions to proceed in accordance with this opinion.

Filed March 25, 1884.   Petition for a rehearing overruled May 28, 1884.

### DISSENTING OPINION.

NIBLACK, J.—I feel constrained to dissent from the conclusion reached in this cause, as well as from some of the reasons upon which the opinion is made to rest.   The decision of the cause, as I construe the opinion, turns substantially upon the assumption that at the time Reeves purchased two of the Copeland notes, and received the mortgage securing them from Hayes, there was no law in force in this State authorizing the assignment of a mortgage to be recorded ; that for that reason an assignment of the mortgage by Hayes to Reeves would have been unavailing as a means of affording notice to subsequent purchasers, and that, in consequence,

Reeves, Guardian, *v.* Hayes *et al.*

Reeves was not guilty of negligence in failing to obtain such an assignment from Hayes.

In the first place, an assignment from Hayes to Reeves would have conferred upon the latter the legal as well as the equitable title to a proportionate interest in the mortgage, and would, in some respects at least, have very much strengthened his claim to a share in the benefits of the mortgage.

In the next place, there was nothing decided in the case of *Hasselman* v. *McKernan,* 50 Ind. 541, which would have prevented Reeves from taking an assignment of an interest in the mortgage from Hayes, in a separate instrument in writing, executed with such formality as would have admitted it to record, and made the record of it constructive notice as much as the record of the mortgage itself. There has never been any rule of law, or anything in practice, that I am aware of, which has only permitted a mortgage to be assigned by endorsement, and it is only to assignments of mortgages made in that manner that the case of *Hasselman* v. *McKernan* has reference. The record of a mortgage might have been discharged, and the mortgage itself released by a separate instrument in writing. 2 R. S. 1876, p. 334, section 6. Then why might not a mortgage have been assigned in the same way? I can not agree, therefore, that Reeves did all that he might reasonably have done to make his interest in the mortgage purchased from Hayes a matter of record.

I am furthermore unable to resist the impression that the doctrine of the opinion antagonizes the spirit in which, as well as the purposes for which, our registration laws were enacted, and is, in fact, a departure from long recognized principles touching the subject of notice of secret equities in real estate.

Let me illustrate: Suppose I have negotiated with C. for the purchase of a tract of land, but wish to feel assured that his title is good before accepting a conveyance; I go to the record affording information on that subject and there find that A. had purchased the land which C. is proposing to sell to me from the Government of the United States. Then

turning to the record of deeds I further find that A. had conveyed the land to B., and that B. had conveyed it to C., in both cases by deeds regular upon their faces. Then suppose that, upon further examination, I find that no liens have been placed on record against the land, and hear of no secret outstanding equities in it adverse to C.'s title. Under such circumstances I assume that no one will claim that I would not be safe in accepting a conveyance from C. without further inquiry. And yet if the doctrine of the opinion on the subject of secret equities be sound in principle, and hence, of general application, it would be my duty, in addition to what I may have done as above, to seek out both A. and B., and ascertain whether each had received all the purchase-money to which he was entitled, and whether one or the other or both might not have put some incumbrance on the land which the records of the county did not disclose. As a reason for thus extending and applying the doctrine of the opinion, it might be said that I must take notice of the fact that a vendor of real estate has, under ordinary circumstances, a vendor's lien for unpaid purchase-money, and that the owner of land may, in many ways, put an incumbrance upon it without making the transaction a matter of record, and that, having notice that such a lien or incumbrance might have attached to or been put upon the land, I must, at my peril, ascertain whether the land is in fact free from all such liens or incumbrances.

This may be regarded by those favoring the conclusion reached in the case as an extreme illustration of the extent to which the doctrine of the opinion might be carried. Concede this to be so, and still I am unable to see any difference in principle between the hypothetical case presented and the inferences we are justified in making from the arguments used in support of the opinion.

If a subsequent purchaser may be put upon his inquiry as to what has become of the notes secured by a mortgage after the satisfaction of the mortgage has been entered in due

Reeves, Guardian, *v.* Hayes *et al.*

form by the mortgagee simply because he is presumed to know that such notes were by law assignable, and may, in consequence, have been assigned to some stranger to the mortgage record, why may he not, for the same reason, be put upon his inquiry as to whether some previous owner may not hold a vendor's lien for unpaid purchase-money, or as to whether there may not be some outstanding but unrecorded mortgage, or other secret incumbrance upon the land? I confess my inability to answer this question. If we are to be put upon our inquiry in this way as to all kind of secret equities, what becomes of the supposed protecting value of our registry laws? Will not confidence in titles to real estate be greatly impaired by such a holding? The doctrine of *caveat emptor* has a very strong application to sheriff's sales, and, in most respects, a purchaser of real estate at such a sale, simply takes the place of the execution defendant, and yet this court has decided that such a purchaser is protected against secret trusts of which he had no notice at the time of his purchase. *Milner* v. *Hyland*, 77 Ind. 458.

Section 5 of the act of May 4th, 1852, concerning mortgages, which was in force when the satisfaction of the mortgage in controversy in this case was entered, provided that every mortgagee of lands whose mortgage had been recorded, and who had received full payment of his mortgage, should, at the request of the mortgagor, enter satisfaction on the margin, or other proper place in the record of such mortgage, which should operate as a complete release and discharge thereof. 2 R. S. 1876, p. 334.

It will be observed that this statute enjoined primarily, and in a literal sense exclusively, upon the mortgagee, the duty of entering satisfaction on the mortgage record where full payment was made, and it is only by a liberal construction of the statute that it can be held that any one else could take the place of the mortgagee in entering satisfaction of the mortgage. I submit, therefore, that when Wilson found, on examination, that Hayes had entered satisfaction of the Copeland mortgage

on the mortgage record, he had the right to assume, in the absence of actual notice to the contrary, that the entry of satisfaction had been entered in good faith, and by competent authority, and to act upon that assumption. It is only where the discharge upon the mortgage record has been entered by some person other than the mortgagee, that the subsequent purchaser is put upon his inquiry as to the authority of the person who entered the discharge. 2 Jones Mort., section 957.

In the old case of McCormick v. Digby, cited in the opinion, this court said that "After a mortgagee has assigned the mortgage, he can not discharge any part of the premises from the mortgage," and that case has been cited approvingly, and followed, by Hilliard on Mortgages, and Washburn on Real Property, and perhaps other text-writers.

Jones on Mortgages, at section 814, asserts a similar doctrine, but with more elaboration, adding that an entry of satisfaction by a mortgagee, after he has parted with his interest in the mortgage, will be vacated by a court of equity.

As a general and as an abstract proposition, these authorities state the law correctly. A mortgagee, after he has assigned the mortgage, has neither the legal nor the moral right to discharge the mortgage, whether of record or otherwise. It is conceded that if he shall assume to discharge the mortgage after the assignment, his entry of satisfaction will be vacated, provided the rights of innocent third parties will not be thereby injuriously affected.

I have no right to receive payment of a note executed to me after I have assigned it. Yet, if I receive the money due upon it from the maker before he has notice of the assignment, he will be protected. I have no right, either legal or moral, to make a fraudulent conveyance of my land to the injury of my creditors, but if I shall make such a conveyance, and the land shall come into the hands of an innocent purchaser, my creditors can not have the conveyance set aside. I am utterly without authority to make a second conveyance of land which I have once owned, yet if I shall make

such a conveyance to an innocent purchaser, that is to say, to a purchaser without notice, either actual or constructive, of the first conveyance, he will hold the land to the exclusion of the first grantee.

I am, therefore, not contending for the application of any new principle to this case. I am only insisting that principles, generally and thoroughly recognized as governing analogous cases, shall be applied to transactions concerning the discharge of mortgages, or the release of mortgaged lands.

Thomas on Mortgages, at page 142, states, in a nut-shell, the doctrine I am seeking to maintain, as follows: "If a mortgage is discharged upon the record by a person who appears by the record to be the owner of it, even though it has actually been assigned, it will operate to cancel the mortgage as against subsequent purchasers and mortgagees in good faith and without notice, but as to all other persons, the validity of the mortgage will not be impaired."

Jones on Mortgages, at section 472, states the rule to be that "The registration laws and the doctrines of priority by record generally extend to assignments of mortgages as well. The assignment is invalid against subsequent purchasers without notice unless it is recorded. Consequently if a mortgagee transfers the note secured by the mortgage, or makes a formal assignment of the mortgage which is not recorded, and afterwards enters a satisfaction of the mortgage upon the record, * * the mortgage ceases to be a lien, as against one who purchases the property in good faith and without notice." See, also, section 878. The same author, at section 791, says that "The assignee of a mortgage, as a practical matter, should always give notice of the assignment to the holder of the equity of redemption, so as to surely protect himself against payments which may be made in good faith to the assignor. The recording of the assignment is not of itself such notice of the assignment as will afford such protection."

At section 820 it is further said, that "An assignment by

transfer of the debt only is effectual between the parties. The mortgage passes as an incident to the note. No assignment of the mortgage is necessary as between the parties, or as against the mortgagor or others having actual notice of the transfer of the notes. The mortgagor is bound to take notice of such an assignment upon the discharge of his debt, because proper diligence on his part demands that he should require the production of the notes before paying. But if the mortgagee, while the notes are in the hands of the assignee, cancels the mortgage on receiving payment from the mortgagor, who then makes conveyance or a new mortgage to another person, who acts in good faith and in ignorance of the fact that the original mortgage had not been paid to the proper party, such purchaser or subsequent mortgagee has the better title. Such subsequent purchaser or mortgagee is not bound to take notice of an assignment by transfer of the notes alone."

At section 967 it is still further asserted, that " If the giving up of the mortgage notes, or a formal discharge of the mortgage, has been obtained by fraudulent means, this is no payment and discharge of the mortgage. In such case a subsequent mortgagee, whose rights existed at the time of such discharge, can not object to the prior mortgagee being restored to his rights. And so also the mortgage will be reinstated, not only as against the mortgagor, but against one who has purchased from him with notice of the mortgage, or without giving any new consideration, and in whose favor no new rights have intervened since the release. Of course the mortgage can not be restored as against one who has in good faith purchased the property after the cancellation, or has advanced money upon it upon the faith of a clear record title. The mortgage can not be restored when the rights of innocent third persons will be affected."

In the case of *Bank of State* v. *Anderson*, 14 Iowa, 544, commented on in the opinion, the facts were that Anderson mortgaged his real estate to one Mobley to secure certain negotiable notes. Before the notes became due Mobley sold

and transferred them to the bank, but did not assign the mortgage. After this Anderson paid these notes to Mobley by conveying to him the mortgaged lands. Mobley thereupon, in his own name, by a proper writing upon the margin of the record, entered satisfaction of the mortgage.

Afterwards Mobley borrowed money of the Artisan's Bank of New York and secured its repayment by a mortgage on the same lands. Before taking this mortgage from Mobley the last named bank had the title examined by a competent attorney who reported that the lands had no incumbrance upon them. The Indiana Bank had no knowledge of the entry of satisfaction by Mobley and did not consent to it. The Artisan's Bank acted in good faith and had no notice that the mortgage executed by Anderson had not been paid to the proper person.

Upon these facts it was held that the second mortgage had priority. But the opinion says that this case is confessedly against the weight of authority. By whom is it so confessed? Certainly not by the Supreme Court of Iowa, for as stated in the opinion that court has followed that case in two later cases.

In the recent case of *Ogle* v. *Turpin,* 102 Ill. 148, the court stated the law to be that where a mortgagee, after an assignment of his notes secured by his mortgage, acquires the equity of redemption, and enters a formal release of the mortgage upon the record, a party taking a mortgage from him on the same premises, without notice of the assignment of the notes, will acquire a lien superior to that of the holder of the assigned notes; also that as there is no presumption of law that the payee of notes secured by mortgage has transferred the notes before purchasing the equity of redemption from the mortgagor, a person taking a mortgage from the payee will not be held chargeable with notice that the notes secured in the first mortgage have been assigned, but he may rely upon the record as showing title in his mortgagor.

In the State of Kansas the registration laws, including a provision for discharging mortgages after they have been re-

corded, are very similar to ours. The Supreme Court of that State in the case of *Lewis* v. *Kirk*, 28 Kan. 497, also, very recently decided and involving the validity of the release of a mortgage by the mortgagee, after he had transferred the note by endorsement and the mortgage by delivery, reviewed some of its earlier decisions bearing on the same general subject in connection with the registration laws and other kindred statutes of the State. The concluding part of the opinion in that case is as follows:

"Under these statutes we think it is perfectly safe for any person who has no notice of outstanding equities to purchase real estate which the records of the county apparently show is free and clear from all incumbrances. * * * If the mortgage has been recorded and then has been regularly released on the margin of the record thereof by the mortgagee, then we think that any person, if he does it in good faith, may purchase the property in like manner freed from all liens and equities existing in favor of the holder of the mortgage; or in other words, and to state the proposition more succinctly, a purchaser in good faith of real estate may always rely upon the public records, subject only to the equities of persons in open, visible and exclusive possession of the property. A purchaser in good faith of real estate is never bound to take notice of secret equities, liens, interests, trusts or incumbrances, which can not be discovered from an inspection of the public records, or can not be ascertained by inquiries from the parties in possession. He may always rely upon the public records and such inquiries as they suggest, and such inquiries as are proper of the parties in possession; and if from all these the title appears to be clear, he will then obtain a good title, although there may be some outstanding equity or lien in favor of some other person. * * * Where a real-estate mortgage is executed to secure the payment of a negotiable promissory note, such mortgage will so far partake of the negotiable character of the note that whenever the note is transferred by endorsement before due so as to

free it from all equities existing in favor of the maker of the note, or prior endorsers, the mortgage will also be freed from such equities. But until the mortgage is recorded, such transfer will not prevent a third person, who has no notice of the mortgage or transfer, from purchasing the mortgaged property and thereby obtaining a full and absolute title to the property, free and clear from the mortgage lien. But when the mortgage is recorded, its negotiable character is then extended even to *bona fide* purchasers of the property, and it retains such character contemporaneously with the existence of the note to which it is an incident until the note is satisfied, or until the mortgage is released of record by the mortgagee, or his attorney, assignee, or personal representative; and that when the mortgage is so released it then loses its negotiable character to the extent that any third person who may then purchase the property in good faith will obtain the full, complete and absolute title thereto, freed from all equities, liens, interests, trusts or incumbrances existing in favor of any holder of the note and mortgage, whether the note is satisfied or not." See, also, *Burton* v. *Reagan,* 75 Ind. 77. Other extracts of the same import might be given, and numerous other authorities holding substantially the same doctrine might be cited, but I deem it unnecessary to add anything further in that respect.

I think most of the cases which seemingly hold a contrary doctrine will, upon a careful examination, be found to have reference only to the mutual relations existing between the parties to an assigned mortgage, and not to the rights of subsequent purchasers and subsequent mortgagees in good faith and without notice.

Of this latter class are the cases of *Carpenter* v. *Longan,* 16 Wall. 271, and *Gabbert* v. *Schwartz,* 69 Ind. 450. Section 814 of Jones on Mortgages, *supra,* rests mainly, if not entirely, on that class of cases.

I can not see that the cases of *Wolcott* v. *Winchester,* 15

Gray, 461, and *Bayless* v. *Glenn*, 72 Ind. 5, have any practical application to this case in any respect.

One paragraph of the syllabus of the case of *Trustees, etc.,* v. *Wheeler*, 61 N. Y. 88, to which reference is made in the opinion, is as follows: "It *seems* that a release, executed by the mortgagee after assignment, to one acting in good faith and without notice of the assignment, is valid, and as effective to work such discharge as if executed by the assignee."

As to the case of *Lapping* v. *Duffy*, 47 Ind. 51, I need only say at the present hearing that it was made sufficiently distinguishable from a case like the one at bar by what was said in the case of *Ayers* v. *Hays, supra,* which this court now refuses to follow.

The case of *Dixon* v. *Hunter*, referred to in the opinion, was not a parallel case with this in one essential respect, at least, and that is, in that case there was a formal assignment of the mortgage accompanying the transfer of the mortgage debt.

Although the transfer of a debt secured by a mortgage carries the mortgage security with it without an assignment of the mortgage, still, in such a case, the legal title remains in the mortgagee, and it is only through a court of equity, or a court possessing equity jurisdiction, that the security afforded by the mortgage can be made fully available to the assignee of the debt.

When a mortgagee transfers the mortgage debt, but fails to assign the mortgage, he becomes the trustee of the holder of the debt, and the value of the mortgage to the holder as a security must necessarily very much depend, as in cases of other trusteeships, upon the good faith as well as the business capacity of the mortgagee.

When, therefore, any one purchases a debt secured by a mortgage, and fails to take with the transfer of the debt to him an assignment of the mortgage, he must be presumed to know that his interest in the mortgage, as a security, constitutes only a secret equity, which may be wholly lost or destroyed by the bad faith, mismanagement or mistake of the

mortgagee, and these contingencies ought to be taken into consideration by the purchaser in estimating the value of the mortgage debt.

For the reasons given I can not escape the conclusion that Wilson is entitled to priority over the holders of the unpaid Copeland notes, and that, consequently, the judgment below ought to be affirmed.

Filed March 25, 1884.

## DISSENTING OPINION.

ZOLLARS, J.—It will be seen by an examination of the principal opinion, and the dissenting opinion by Mr. Justice NIBLACK, that the point of difference is as to the priority of liens between the *bona fide* assignees and holders of notes secured by a prior mortgage, and a subsequent mortgagee in good faith, and for value, the prior mortgage having been cancelled and released by the mortgagee named therein, after he had parted with the notes, and before the execution of the second mortgage. To a number of the propositions of law stated in the principal opinion I yield ready assent. From the conclusion reached, and the principal reason upon which it is based, I am constrained to dissent.

I concur in the conclusion reached in the dissenting opinion, but do not think it is put upon sufficiently comprehensive ground. The whole controversy, I think, hinges upon the question, whether, at the time the mortgages were executed in 1873 and 1875, there was any law in this State for the recording of assignments of mortgages, and upon the force and effect to be given to the statute in relation to the cancellation of the mortgages upon the records.

In the absence of registry laws, the maxim " *Qui prior est tempore, prior est jure,*" applies both to legal estates and equitable rights. The sole purpose of registry laws is to protect subsequent purchasers against prior and unrecorded conveyances. In the absence of such laws prior grantees and mortgagees are superior in right, as they are in time, and

will be protected as against subsequent deeds and mortgages. It is by reason of these laws only that subsequent grantees and mortgagees may acquire superior rights to prior grantees and mortgagees, who have not recorded their conveyances within the time fixed by such laws. Broom's Legal Maxims, 353, *et seq.;* 2 Washb. R. Prop. 148; Jones Mort., sections 572, 576, 607; Wade Notice, sections 96, 162, 196; *Ely* v. *Scofield,* 35 Barb. 330; *Berry* v. *Mutual L. Ins. Co.,* 2 Johns. Ch. 603; Pomeroy Eq., section 413; *James* v. *Morey,* 2 Cowen, 246.

It is well settled that the assignment of the notes carries the mortgage as an incident, and that a mortgagee and his assignee are regarded as purchasers under the registry laws. *Bowling* v. *Cook,* 39 Iowa, 200. It is well settled, too, that after a mortgagee has parted with the notes secured by a mortgage, he has no power to extinguish the mortgage by a release upon the records or otherwise. Such a release does not affect the mortgage as to the assignee or mortgagor. It has no effect other than to postpone the lien as to subsequent encumbrancers in good faith and for value. And it will not have this effect unless the assignee has been guilty of negligence in not taking and recording an assignment of the mortgage under the registry laws, or has been guilty of some wrong or laches whereby the subsequent encumbrancer has been induced to rely upon the release of record, or unless he may rely upon such release in any event. It must be manifest that a party can not sell and convey title to property which he has once sold and conveyed, and that he can not extinguish a mortgage which has passed from him by assignment, and in which he has no longer any interest.

In all cases where the subsequent grantee or encumbrancer acquires the superior right, it is not because the grantor has the power to convey two titles to the same property, but because the first grantee is precluded by some kind of estoppel, or act of negligence, under the registry laws or otherwise. In the statutes of many of the States, a prior conveyance is

declared to be void, as against a subsequent *bona fide* purchaser, unless recorded within the fixed time.

Where rights of innocent third parties have not intervened, a release of a mortgage without authority, or procured by fraud, will be set aside in favor of the assignee. It will not be, however, as against *bona fide* subsequent grantees or encumbrancers, where the assignee has been guilty of negligence or wrongs that ought to estop him. The authorities cited in the principal and dissenting opinions are not in conflict, but in harmony with this statement. In the case of *McCormick* v. *Digby*, 8 Blackf. 99, no rights of third parties were involved.

The section cited from Thomas on Mortgages is simply that if a mortgage is thus released after assignment, the release will be valid as to subsequent purchasers in good faith, but will have no effect as to others. The author refers to the case of *Ely* v. *Scofield, supra*, where it was held that such a release did not affect the validity of the mortgage, but simply took away its priority over the deed of a subsequent purchaser in good faith. The statement in Jones on Mortgages, section 814, that a satisfaction entered by the mortgagee after the assignment of the note may be set aside, is upon the assumption, as therein stated, that there is no statute requiring the assignments of mortgages to be recorded. The cases cited in support of the text are all cases in which no rights of third parties, as subsequent grantees or encumbrancers, were involved. Such were the cases of *Gordon* v. *Mulhare*, 13 Wis. 22. The case of *Sample* v. *Rowe*, 24 Ind. 208, cited, so far as it bears upon the question, supports the proposition as I have stated it.

In the case of *Lapping* v. *Duffy*, 47 Ind. 51, the subsequent mortgagees were not innocent mortgagees, for the reason that there was an unsatisfied judgment of foreclosure, which was notice to them. There is no hazard in asserting that the doctrine as I have stated it is the well settled doctrine, and that the cases in which such releases have been set aside have been

cases between the immediate parties, and not involving inno-
cent third parties. Occasionally a statement will be found in
text-books that such a release will be set aside as against sub-
sequent purchasers; but upon an examination of the cases
cited in support of the text, it will be found that the subse-
quent purchasers were not subsequent to the release, but only
subsequent to the mortgage thus satisfied. The difference is
very apparent, and very important. Such are the cases of
*Harrison* v. *Johnson*, 3 C. E. Green (N. J. Eq.) 420; Jones
Mort., section 967; *Robinson* v. *Sampson*, 23 Maine, 388.

It will be found upon an examination of the cases cited in
both the principal and dissenting opinions, that the subse-
quent encumbrancers were protected because of provisions
of the registry laws, or because of the negligence of the as-
signee in not taking and recording an assignment of the
mortgage under the registry laws. In the case of *Bank of
State of Indiana* v. *Anderson*, 14 Iowa, 544, the question arose
between the assignee of notes secured by a mortgage and a
subsequent mortgagee, the first mortgage having been can-
celled of record by the first mortgagee after he had assigned
the notes, and before the execution of the second mortgage.
The second mortgagee examined and relied upon the records.
It was held that, having done this, he was not chargeable
with negligence; that under the laws of Iowa an assignment
of a mortgage may be recorded; that the assignee of the
notes might have protected himself and the second mort-
gagee, against the fraud of the first mortgagee, by taking an
assignment of the mortgage and putting it on record, and
that, not having taken that precaution, he was guilty of such
negligence as would subordinate his lien to the lien of the
subsequent mortgage. This case was not doubted, but cited
in the cases of *McClure* v. *Burris*, 16 Iowa, 591, *Walker* v.
*Schreiber*, 47 Iowa, 529, and other cases in that State. The
case of *Ogle* v. *Turpin*, 102 Ill. 148, is similar in facts with
the Iowa case, and a like ruling was made. After holding
that the law of Illinois authorizes the recording of assign-

ments of mortgages, the court, per Mr. Justice DICKEY, said: "When a man buys notes secured by mortgage he becomes thereby the equitable assignee of the mortgage, and acquires an equitable interest in the mortgaged lands. If he wishes to protect that interest against subsequent purchasers, he may do so by taking a written assignment of the mortgage, and placing that assignment upon record." The case of *Lewis* v. *Kirk*, 28 Kan. 497, in its facts, is similar to the Iowa and Illinois cases, and the one at bar. The decision is under a statute, held to authorize the recording of assignments, and the subsequent purchaser was protected. Section 472, Jones Mort., cited, is in harmony with these cases. It is as follows: "472. The registration laws and the doctrines of priority by record generally extend to assignments of mortgages as well. The assignment is invalid against subsequent purchasers without notice unless it is recorded. Consequently if a mortgagee transfers the note secured by the mortgage, or makes a formal assignment of the mortgage which is not recorded, and afterwards enters a satisfaction of the mortgage upon the record, * * the mortgage ceases to be a lien, as against one who purchases the property in good faith and without notice," etc., and so of section 820, Jones Mort., also cited. In that section it is said: "Such subsequent purchaser or mortgagee is not bound to take notice of an assignment by transfer of the notes alone. The assignee of the notes can easily protect himself by requiring an assignment of the mortgage and recording it, and thus give notice of his rights; and if he omits to do this, he should be the party to suffer for the negligence," etc. This section is based upon the Iowa cases. And so the statement in Thomas Mort., p. 142, is based upon New York cases, which hold that assignments of mortgages may be recorded, and charge negligence upon the assignee who neglects to take an assignment of the mortgage, and put it upon record. See the same work, pp. 118, 150, 154, 159.

In accord with this doctrine is the late case of *Williams* v. *Jackson*, decided by the Supreme Court of the United States, as

we find it reported in The Central Law Journal, vol. 17, p. 148: A. sold land to B., and for the purchase-money took four notes, executed by B. These notes were secured by a trust deed, executed by B. and wife to C., who, upon full payment, was to release and convey the land to D., the wife of B. This trust deed was recorded in January, 1875. These notes were endorsed to Jacksons. After this, on the 15th day of September, 1876, and without the knowledge of Jacksons, the trustee and A. executed a deed of release to D., the wife of B., reciting therein that the debt had been paid. B. and wife about this time were seeking to make a loan upon the land. The appellant agreed to loan the money if satisfied by a conveyancer's abstract that the land was free of all encumbrance, but not otherwise. The release being put upon record, and the appellant being thereby satisfied as to the title, he advanced $5,000, received a note executed by B., secured by a trust deed by B. and wife. Jackson filed his bill to have the release and subsequent conveyances declared void as against the first trust deed, and the trust created by that deed be declared to have priority over all subsequent encumbrances. After reciting the statute of the District of Columbia, which provides that any title bond or other written contract in relation to land may be acknowledged and recorded in the same manner as deeds of conveyance, the court, per Mr. Justice GRAY, said, that the assignee of the notes, having taken no precaution to obtain, and put on record, an assignment of his rights in such form as would be notice to all the world, was bound by the release, as against any one acting upon the faith of the record, and ignorant of the real state of facts; and, further, as follows: " If the plaintiffs wished to affect subsequent purchasers with notice of their rights, they should have obtained a new conveyance or agreement, duly acknowledged and recorded, in the form either of a deed from the original grantors, or of a declaration of trust from the trustees, or of an assignment from Augustus Davis (A.) of his equitable interest in the land as security for the payment of

the notes. The record not showing that any person other than Augustus Davis (A.) had any interest in the notes or in the land as the security for their payment, an innocent subsequent purchaser or encumbrancer had the right to assume that the trustees, in executing the release, had acted in accordance with their duty. * * * It was suggested in argument that as the first deed of trust showed that the notes secured thereby were negotiable and were not yet payable, and that the land was not intended to be released from this trust until all the notes were paid, Williams" (appellant) " was negligent in not making further inquiry into the fact whether they were still unpaid. But of whom should he have made inquiry? The trustees under the first deed, and the original holder of the notes secured thereby having expressly asserted under their own hands and seals that the notes had been paid, and Sweet (B.) and wife having apparently concurred in the assertion by accepting the deed of release and putting it on record, he certainly was not bound to inquire of any of them as to the truth of that fact; and there was no other person to whom he could apply for information, for he did not know that the notes had ever been negotiated, and he had no reason to suppose that they had not been cancelled and destroyed. To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof or knowledge, fraud or gross or wilful negligence on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business."

As supporting the same doctrine, and upon substantially the same grounds, see *Clark* v. *Jenkins*, 5 Pick. 280; *Henderson* v. *Pilgrim*, 22 Texas, 464. The case of *Summers* v. *Kilgus*, 14 Bush, (Ky.) 449, was decided in favor of the subsequent purchaser, upon the two grounds, viz., that the statute provides for a release of a mortgage lien by the person entitled to the same, and for a register of assigned notes.

The case of *James* v. *Morey*, *supra*, cited and quoted from

in the principal opinion, was decided upon the ground that at the time the rights of the parties became fixed there was no law requiring or authorizing the recording of an assignment of a mortgage. It differs with the case in hearing in that there was no cancellation of record or otherwise. The subsequent purchaser bought with the mortgage on record unsatisfied. It was held that the assignee was not guilty of any wrong or negligence in not giving notice, because no way was provided by which he could give such notice, and that as the mortgage was of record unsatisfied, it was enough to put the purchaser upon inquiry, and that he was guilty of negligence in not making such inquiry and ascertaining whether or not it was a subsisting lien.

It is an enunciation of the doctrine that where loss must fall upon one of two parties by the wrong of a third, he shall be protected who is guilty of the least negligence. If in the present case there was no law for the recording of the assignment of the mortgage, and the subsequent mortgagee was not justified in relying upon the cancellation on the records, no fault or negligence can be charged upon the assignees of the notes; neither can any wrong or negligence be charged upon the subsequent mortgagee, unless he was guilty of negligence in relying upon the records showing a release of the mortgage. If neither party was guilty of negligence, the rights of the assignees of the notes, being prior in time and equal in equities, must be protected. This brings us to the statutes of this State and the decisions thereunder. The principal opinion is based upon the theory that prior to 1877 these statutes contained no provisions for the recording of assignments of mortgages, nor any other provision which protected the innocent subsequent mortgagee in a case like the present. Much importance is given to the case of *Lapping* v. *Duffy*, *supra*, and its citation in the cases of *Marshall* v. *Stewart*, 65 Ind. 243, *Teal* v. *Hinchman*, 69 Ind. 379, *Evansville, etc., Co.* v. *State, ex rel.*, 73 Ind. 219, and *Hunt* v. *Elliott*, 80 Ind. 245.

I have already referred to the case of *Lapping* v. *Duffy*,

*supra.* That case was as follows: A. executed notes to B., and a mortgage to secure them. B. assigned the notes to C., who foreclosed the mortgage. C. assigned the judgment to D. Quite a while after this, and while the judgment was in full force, B., without any interest in the mortgage, and without authority, made an entry of satisfaction on the record of the mortgage. After this, A. executed mortgages on the same real estate to E. and others. The contest was between D., the owner of the judgment of foreclosure, and the junior mortgagees. It was held that B. had no authority to cancel the mortgage; that the mortgage was not so merged in the foreclosure as to destroy its lien, and that the lien in favor of the owner of the foreclosure judgment was, therefore, prior to the subsequent mortgages. It is not stated in the opinion whether this priority was because there was no law for the recording of assignments of mortgages, or because the record of the foreclosure was notice to the subsequent mortgagees. That this record was constructive notice to the subsequent mortgagees I think there can be no doubt. Upon this theory no fault can be found with the decision. The citation of the case, in *Marshall* v. *Stewart, supra,* was in support of the single proposition that a promissory note is merged in the judgment upon it. In the case of *Teal* v. *Hinchman,* 69 Ind. 379, the contest was as to the priority of an unpaid mortgage, which had been foreclosed, over subsequent mortgages. The Lapping case was cited only in support of the proposition that the mortgage was not merged in the judgment of foreclosure, in such sense as to defeat the lien of the mortgage.

It was also cited in the cases of *Evansville, etc., Co.* v. *State, ex rel., supra,* and *Hunt* v. *Elliott, supra,* in support of the single proposition, that a mortgage is not thus merged in a judgment of foreclosure. Neither the Lapping case nor any of the cases, *supra,* in which it is cited, is an adjudication upon the question as to whether or not, prior to 1877, there was any law in the State for the recording of assignments of mortgages, nor does it or any of those cases settle

what the rights of the parties might have been, had there been no record of a foreclosure. It is said in the principal opinion that these cases, together with the case of *Hasselman* v. *McKernan*, 50 Ind. 441, and its citation in the subsequent cases of *Coombs* v. *Carr*, 55 Ind. 303, *Dixon* v. *Hunter*, 57 Ind. 278, *Cain* v. *Hanna*, 63 Ind. 408, and *Hosford* v. *Johnson*, 74 Ind. 479, and the support given it in the case of *Etzler* v. *Evans*, 61 Ind. 56, constitute "an unruffled line of decisions" in support of the doctrine held in the principal opinion. Let us see if that is so. As already seen, the case of *Lapping* v. *Duffy*, supra, and the cases in which it is cited, have but a very remote bearing, if any bearing at all, upon the questions at issue in the case before us.

In the case of *Hasselman* v. *McKernan*, supra, the contest was whether the assignee of a junior mortgage and notes secured thereby could redeem from a sale under a prior mortgage, in the suit to foreclose which he had not been made a party. It was held that as junior mortgagee he could. It is said in the opinion that in the action to foreclose the prior mortgage, the holder of it might have put an interrogatory to the assignor of the junior mortgage, and thus have learned whether or not he had assigned it, and if so, to whom. And that thus the assignee might have been made a party and concluded by the decree. In speaking of the assignee of the junior mortgage, and his right to redeem, it was said : " We have no statute providing for the recording of assignments of mortgages, and making such record notice ; hence the plaintiffs" (assignees of the junior mortgage) "were guilty of no laches." This is the whole of the decision in relation to the question as to whether or not, under the statutes, assignments of mortgages might be recorded, so as to give notice. It is apparent, I think, from the brief manner in which the question was disposed of, that the learned judge who wrote the opinion did not regard it as vital to a decision of the case, and hence did not give it a very thorough examination. Our registry laws are in no way referred to except by the general statement. It had

been decided many times previous to this that a junior mortgagee, not made a party to a suit to foreclose a senior mortgage, might redeem therefrom. *Proctor* v. *Baker*, 15 Ind. 178; *Murdock* v. *Ford*, 17 Ind. 52. I do not take the time to cite the other cases.

*Hasselman* v. *McKernan* is cited in the cases of *Coombs* v. *Carr*, supra, *Cain* v. *Hanna*, supra, and *Hosford* v. *Johnson*, supra, in support of the single proposition that junior encumbrancers have the right to redeem from a sale on a prior mortgage. Neither of these cases decides anything in relation to the law for the recording of assignments, nor do they decide anything bearing upon the case at bar. In the case of *Dixon* v. *Hunter*, supra, which involved the right of a junior mortgagee to redeem from a sale under a prior mortgage, the Hasselman case was cited with approval, although the decision was based, in the main, upon the case of *Lapping* v. *Duffy*, supra, already examined. Here, again, there is no reference to our registry laws except the general statement.

The case of *Etzler* v. *Evans*, 61 Ind. 56, cited as in harmony with the above cases, and as supporting the doctrine of the principal opinion, decides nothing akin to any question involved in the case in hearing, except that the recording of an instrument not authorized by law to be recorded is notice to no one. This proposition I do not controvert, nor is it controverted in the opinion by Mr. Justice NIBLACK. That, however, is decisive of nothing here.

Thus we have one adjudication only once cited and approved, that prior to the act of 1877, section 1093, R. S. 1881, there was no law in this State for the recording of assignments of mortgages. This is the whole of what in the principal opinion is called a line of decisions.

On the other hand, in the case of *Fox* v. *Wray*, 56 Ind. 423, it seems to have been taken for granted that, as against the assignee of notes secured by mortgage, a purchaser in good faith, after a release of record had been made by the mortgagee, would be protected. In the case of *Ayers* v. *Hays*,

60 Ind. 452, the question came squarely before the court for the first time as the controlling question in the case, and it was held that the subsequent encumbrancer should be protected.

Without referring to or citing it, the doctrine of this case was distinctly asserted in the case of *Burton* v. *Reagan*, 75 Ind. 77. In that case the mortgage had been released upon the records by the mortgagee after he had assigned the notes. The question was whether subsequent purchasers in good faith should be protected. The court said (p. 81): "But, if the Reagans were innocent purchasers of the land, they took it discharged of the mortgage lien of Hadley." Hadley was the assignee of the notes secured by the mortgage.

The majority opinion treats the case of *Hasselman* v. *Mc-Kernan, supra,* and the case following it, as in irreconcilable conflict with the case of *Ayers* v. *Hays, supra,* and the cases following it, and hence overrules the latter cases. In regard to the case of *Ayers* v. *Hays, supra,* it said in the principal opinion: "*Ayers* v. *Hays,* 60 Ind. 452, does decide this question, and against the view here declared; but it is evident that in that case the court proceeded on the theory that assignments were entitled to record. We quote from the opinion the following: 'In the case at bar, there was nothing on record, when Hays and Butcher purchased the mortgaged property, indicating that Campbell had parted with the note in suit, or that it remained unpaid, or that Campbell was not fully authorized to enter satisfaction of the mortgage, or had made any mistake in such entry of satisfaction.'" It is further said in the principal opinion: "As between *Ayers* v. *Hays, supra,* and *Dixon* v. *Hunter, supra,* there is irreconcilable conflict, and we must choose one or the other of them."

Why is the case of *Ayers* v. *Hays, supra,* and the cases supporting it, in irreconcilable conflict with the cases of *Hasselman* v. *McKernan, supra,* and *Dixon* v. *Hunter, supra?* Because, as stated in the principal opinion, the Hasselman and Dixon cases are, in a measure, based upon the idea that prior

to the act of 1877 there was no law in this State for the re-
cording of assignments of mortgages; while the Ayers case
is based upon the idea that there was such law.    What is the
result of this irreconcilable conflict?    I understand the rule
to be well settled that where two cases, by the same court, are
in irreconcilable conflict upon a proposition of law, the later
decision controls, and overthrows and overrules the former.
If that be so, then the Hasselman and Dixon cases, reported
in 50th and 57th Ind., have been overthrown and overruled
by the Ayers case, reported in 60th Ind.

The question then is, shall we now overthrow the Ayers
case, and go back to the overruled Hasselman case, and the
Dixon case based upon it, especially when we are informed in
the principal opinion that some of the members of the court
concurring in that opinion regret the decision in the Hassel-
man case?   The act of 1877, for the recording of assignments
of mortgages, can not properly be said to be a concurrence by
the Legislature in the Hasselman case, decided in 1875.    It
was simply a yielding to the authority of the court in the
Hasselman case, and at the first opportunity passing an act
to supply a deficiency declared in that case by the court to
exist.    And suppose we now overthrow the Ayers case, and
return to the Hasselman and Dixon cases, what then?

Under the reasoning in the principal opinion, as I under-
stand it, the decision in the Ayers case would be good law if
made under the act of 1877.    Under the authorities, there
can be no doubt about this.   It will follow, therefore, that
in all cases like the one in hearing, arising subsequent to that
act, we shall have to reassert the doctrine of the Ayers case.
To concede this is to concede what will overthrow the argu-
ment in the principal opinion, that the commercial quality of
mortgage notes is, in some measure, a controlling considera-
tion in the decision of this case.    If that were a controlling
consideration, it would not be taken away by the act of 1877.
That act does not provide for the recording of assignments
of such notes.    It provides for the recording of assignments

of mortgages. The fact is, these are not the notes of the commercial world. In the whirl and rush of business transactions, business men and banks do not stop to investigate titles to real estate to see if the mortgage note is well secured, but rely upon personal security. Such notes are taken in the commercial world, in the main, from failing debtors only. The act of 1877 was not intended to, nor does it in any way, affect the commercial quality of mortgage notes. Suppose a case just like this should arise under that act; the notes are assigned in writing, but the mortgage is not. The assignee of the notes can not record the assignment, because the law makes no provision for such record. Will the commercial quality of the notes protect the holder as against an innocent mortgagee, subsequent to a cancellation of the first mortgage, by the mortgagee therein named? If not, why not? Because registry laws are intended to furnish a ready and reliable means of knowledge to subsequent purchasers. That knowledge may be relied upon with security. That security is the object of the registry laws of whatever nature. The assignee of mortgage notes must use every means furnished by the law, to give notice to subsequent purchasers. Hence, if he may record an assignment of the mortgage, he is bound to procure such assignment and put it on record. If he contents himself with an assignment of the notes only, his rights will be subordinated to the lien of a subsequent mortgagee, acting upon the faith of the records.

For the sake of consistency, uniformity in our decisions, and because I believe that the Ayers case was correctly decided, I am opposed to the overruling of it. And because I believe that the Hasselman and Dixon cases were not correctly decided, so far as they affect any question involved in the case in hearing, I am opposed to reinstating them, or reaffirming the doctrine of them.

A proper estimate of the above cases, and a proper decision of the question before us, necessarily involve a proper construction of our registry laws. At the time the mortgage

was released, there was in force the following statute, with others, viz.: " Every mortgagee of lands whose mortgage has been recorded, having received full payment of the sum or sums of money therein specified, * * * shall * * * enter satisfaction on the margin or other proper place in the record of such mortgage, which shall operate as a complete release and discharge thereof." 2 R. S. 1876, p. 334, section 5.

It has been held by the Supreme Courts of Kentucky and Ohio, that subsequent purchasers and encumbrancers may rely upon such cancellation of record, and will be protected as against the assignees of the notes secured by the mortgage, without reference to laws for the recording of assignment of mortgages.

In the case of *Swartz* v. *Leist,* 13 Ohio St. 419, the mortgagee, after he had assigned the notes, and before they were all due, cancelled the mortgage on the records. After this, a party relying upon the record, purchased the real estate covered by the mortgage. The statute of Ohio, in relation to the cancellation of mortgages, is substantially the same as ours. Mr. Justice SCOTT, in delivering the opinion of the court, said : " But the parties here are not equally faultless, and do not stand *in æquali jure.* Swartz negligently or confidingly permitted Little, the mortgagee, to retain the legal title conveyed by the mortgage, and the power of control over it. Little had thus the legal power, and, ostensibly, a perfect right to discharge and release it. Leist, the purchaser, having no reason to suspect fraud, was justified in regarding the release legally made, by one who was ostensibly the proper party, as an effectual discharge of the lien. And as between these parties, he who unwisely reposed confidence in Little, and gave him the power to defraud, should suffer the consequences. * * It is claimed that the release entered on the record, in this case, was inoperative, under this statute, because the note held by Swartz had not matured at the time, and was therefore not ' due,' within the meaning of the statute ; and for the further reason, that '*payment of the money* ' was not, in fact,

'*received.*' This statute was intended to facilitate the discharge of mortgage liens.   It is remedial in its character, and should be liberally construed. * * * And as to the want of actual payment—so far as respects the lien of the mortgage, the mortgagee is clearly estopped by his recorded release, from denying, as against subsequent purchasers in good faith, the payment thus evidenced by his own act.   And this estoppel must be equally effective against the holder of a latent equity, arising from contract with the mortgagee."

The Kentucky statute provides that "Liens, by deed or mortgage, may be discharged by an entry acknowledging satisfaction of the same on the margin of the record thereof, *signed by the person entitled to the same*, * * * and attested by the clerk, * * * which, in case of a mortgage, * * * shall have the effect to reinvest the title in the mortgagor," etc.   The Supreme Court held that the purchaser, relying upon a cancellation made by the mortgagee, under this statute, should be protected as against the holder of the notes by assignment, and said: "This provision indicates that it was the intention of the Legislature that a release, made in conformity to the statute by the proper person, should have the same effect as a deed of release, and that it should furnish an abiding evidence of the extinguishment of the lien ; and we are of the opinion that, fraud aside, it is conclusive when invoked by a subsequent vendee for his protection against liens which it purports to release."   *Summers* v. *Kilgus*, 14 Bush, (Ky.) 449.   See, also, to somewhat the same effect, *Ely* v. *Scofield*, 35 Barb. 330.

These cases support the reasoning of Mr. Justice NIBLACK, in his dissenting opinion, and in my judgment they state a reasonable rule.   As between the immediate parties to a conveyance or mortgage, the registry laws neither add to nor detract from the instrument.   The sole purpose of such laws is to facilitate transactions in real property by affording an easy and safe means of ascertaining the condition of titles, and at the same time protect subsequent purchasers.   As a

part of the system, and for the same purpose, we have the statute for the cancellation of mortgages on the records. It will hardly do to charge the subsequent purchaser with negligence because he relies upon the records thus provided for by law. If he finds the mortgage cancelled on the records, by the party declared by law to be the proper party to make such cancellation, what more can be reasonably required of him? Must he in every case be required to demand a production of the notes secured by the mortgage? As is very frequently the case, they may have been destroyed by the mortgagor after they were paid, and their production thus rendered impossible. In such case, must the mortgagor be crippled in the conveyance of his real estate, because he can not produce such notes?

Suppose, on the other hand, that the notes have been transferred, and they are not paid, but by collusion between the mortgagor and the mortgagee the latter has entered a satisfaction of the mortgage on the records in the manner provided by law, of whom, in such case, must the subsequent purchaser make inquiry? He can not go to the assignee of the notes, because he has no means of knowing who he is—he has no means of knowing that the notes have been assigned. If he goes to the mortgagor and mortgagee, they will falsify in relation to the notes as they have falsified upon the records. If the release upon the records may not be relied upon, what is the purpose of such release? If the mortgage has been discharged by payment, it is no longer of any force, whether cancelled upon the records or not. Why, then, such cancellation? Simply to furnish reliable information to subsequent purchasers. I, however, go further, and maintain that the statutes provided for the recording of assignments of mortgages, and that the assignees of the notes were thus provided with a means of protecting themselves and the subsequent mortgagees by taking an assignment of the mortgage and putting it on record, and that, not having done so, they were guilty

of negligence, on account of which their liens should be postponed to that of the subsequent mortgage.

We find the following in the statutes as they existed when the release and mortgage in controversy were made:

Section 16, 1 R. S. 1876, p. 365: " Every conveyance or mortgage of land, or of any interest therein, * * * shall be recorded," etc.

Section 18, 1 R. S. 1876, p. 365: "To entitle any conveyance, mortgage or *instrument of writing* to be recorded, it shall be acknowledged by the grantor," etc.

Section 19, 1 R. S. 1876, p. 366: "When any conveyance, mortgage, or *other instrument* required to be recorded, is acknowledged," etc.

Section 33, 1 R. S. 1876, p. 368: "The term 'grantor,' as used in this act, shall be construed to embrace every person by whom any estate or *interest* in lands is *created,* granted, bargained, sold, conveyed, *transferred,* or *assigned.*"

Section 34, 1 R. S. 1876, p. 368: "*All instruments of writing of and concerning lands, or concerning any interest therein,* * * *shall be deemed a conveyance within the provisions of this act,*" etc.

Section 7, 2 R. S. 1876, p. 335: " *The recording of the assignment of a mortgage* shall not be deemed, of itself, notice to . a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them to the mortgagee, or any assignee, before actual notice of such assignment."

If these statutes did not authorize the recording of assignments of mortgages, then the last section above set out is utterly. meaningless. These sections, and especially the last, were evidently copied from the statutes of New York, where they had been interpreted and held to authorize and require the recording of assignments of mortgages. So our Legislature doubtless understood them when they were enacted. If not, what was the purpose of this seventh section? Is it to have no meaning? Is the Legislature to be convicted of having done a foolish and useless thing? Is there no case to which this section can be applied? If there is this is the case.

This section assumes that such assignments may be recorded, and that when so recorded, the record shall be constructive notice to all parties interested, except those specially named. In my judgment, this section of itself was sufficient authority for the recording of the assignment. It was doubtless, too, the legislative understanding that the other sections of the statute provided for the recording of such assignments when properly acknowledged. The terms are comprehensive. Every conveyance when acknowledged by the grantor shall be recorded. Sections 16, 18 and 19, *supra*.

The term grantor shall be construed to embrace every person by whom any estate or *interest* in land is *created, transferred or assigned*. Section 33, *supra*.

All instruments in writing of and *concerning any interest* in land shall be deemed a conveyance within the provisions of the act. Section 34, *supra*.

Can there be any doubt about these terms being sufficiently comprehensive to embrace the assignments of mortgages? Is not a mortgage an instrument in writing of and concerning an interest in land, under this statute? Is not the assignment of a mortgage a transfer and assignment of an interest in the land under this statute? Does not the term grantor embrace the assignor of a mortgage under this statute? If not, what do these terms mean as used in the statute? They can not refer to a deed, because a deed can not be assigned. A mortgage does not convey the legal title, but it conveys a greater interest in the land than any other instrument except a deed. Under the above statute, a mortgage is clearly a conveyance of an *interest* in the land mortgaged.

The 18th section of the statute of descents, 1 R. S. 1876, p. 411, provides that a second wife, in the case named, may not *alienate* real estate held in virtue of a previous marriage. In construing this statute, this court, in the case of *Vinnedge* v. *Shaffer*, 35 Ind. 341, said: "A mortgage is in some sense an alienation and fairly within the prohibition of the stat-

ute." This case was cited and fully approved in the similar case of *Bowers* v. *Van Winkle*, 41 Ind. 432. It has been many times cited with approbation; I cite some of the cases: *Scott* v. *Greathouse,* 71 Ind. 581; *Connecticut Mutual Life Ins. Co.* v. *Athon,* 78 Ind. 10; *Schlemmer* v. *Rossler,* 59 Ind. 326; *Unfried* v. *Heberer,* 63 Ind. 67; *Edmondson* v. *Corn,* 62 Ind. 17; *Miller* v. *Noble,* 86 Ind. 527

And so, in the case before us, a mortgage is a conveyance of an interest in the land covered by it.

The registry laws of Kansas bearing upon the question here involved, as we find them set out in the case of *Lewis* v. *Kirk,* 28 Kan. 497 (42 Am. R. 173), are as follows: "Every instrument in writing that conveys any real estate, or whereby any real estate may be *affected,* * * * may be recorded in the office of the register of deeds of the county in which said real estate is situated." It is provided further, that the record of such instrument shall impart notice to others. "No such instrument in writing shall be valid, except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

Section 3, referred to in this case, is as follows: "The recording of the assignment of a mortgage shall not be deemed, of itself, notice to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee." Gen. Stat. Kan., 1868, p. 582.

Another section of the statute provides for the cancellation of the mortgage on the records. The mortgage in the case, *supra,* had been cancelled by the mortgagee after he had assigned the notes. The question in the case is thus stated by the court: "The question now arises, who shall suffer from the fraud of Shaver—the *bona fide* holder of the note and mortgage, or the *bona fide* purchaser of the mortgaged property?" In speaking of the statutes above set out, the court said: "Sec. 3 of the act concerning mortgages recognizes 'the recording of the assignment of a mortgage.'

Reeves, Guardian, *v.* Hayes *et al.*

* * * And section 5 of the act relating to frauds and per-
juries provides that no interest in lands exceeding one year
in duration shall be assigned or granted, unless it be by some
deed or note in writing, signed by the party assigning or
granting the same. * * * Under these statutes we think it
is perfectly safe for any person who has no notice of out-
standing equities to purchase real estate which the records
of the county apparently show is free and clear from all in-
cumbrances. * * * Or, if the mortgage has been recorded
and then has been regularly released on the margin of the
record thereof by the mortgagee, then we think that any per-
son, if he does it in good faith, may purchase the property in
like manner freed from all liens and equities existing in favor
of the holder of the mortgage."

It will be noticed that the terms of the Kansas statutes are
not as comprehensive as those used in our statute, and that
section 3, of that statute, is the same as section 7 of ours,
above set out. This case thus becomes an authority squarely
in point in support of the proposition, that under our statutes
in 1873 and 1875, assignments of mortgages might have been
recorded, and thus afforded notice to subsequent encum-
brancers.

The statutes of Iowa provide that no instrument affecting
"*real estate*" shall be valid against subsequent innocent pur-
chasers, unless recorded. R. S. Iowa, 1860, p. 391.

The phrase "*real estate*," as used in this statute, is declared
by another statute to include all rights thereto and interests
therein, equitable as well as legal. R. S. Iowa, 1860, p. 5,
section 29.

In the case of *Bank of the State of Indiana* v. *Anderson,* 14
Iowa, 544, the contest, as already stated, was between the as-
signee of notes secured by a prior mortgage, and a subsequent
*bona fide* mortgagee, after the first mortgage had been can-
celled by the first mortgagee. In passing upon the case, and
in construing the above statutes, the Supreme Court said:

"But, again, a mortgagee is a purchaser within the mean-

ing of our recording acts. *Porter* v. *Green,* 4 Iowa, 571; *Seevers* v. *Delashmutt,* 11 *Id.* 176. Under this law, therefore, appellants are purchasers. An instrument affecting this estate is, therefore, invalid as against them, until it is recorded, and by ' real estate,' is meant ' all *rights thereto and interest therein,* equitable as well as legal.' * * The statute has thus given a general rule, and, unlike those of many of the States, has not undertaken to prescribe special regulations for the different instruments affecting real property. Some of the States, for instance, after providing a general law upon the subject of mortgages and conveyances, expressly require assignments of mortgages to be recorded. Our law, by using general terms, well defined and understood, obviates the necessity of more specific legislation. And, in view of this legislation, why should the assignee of a mortgage be exempt from the duty of placing upon record that which evidences his title to the ' right or interest' thus purchased."

The statute of Minnesota, after providing that conveyances of real estate, to be effectual against subsequent purchasers, shall be recorded, that the word " purchaser " shall include assignees of mortgages, etc., and that the term " conveyance," as used in the statute, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created or assigned, etc., or by which the title to any real estate may be affected, etc., further provides as in section 7 of our statute, above set out, that the recording of assignments of mortgages shall not of itself be notice to the mortgagor, etc. Statutes of Minn., 1849–1858, sections 24, 26, 29 and 30.

The construction given to these sections by the Supreme Court of that State is, that assignments of mortgages may, and must be recorded to protect the assignees of the notes against a subsequent mortgagee in good faith. *Johnson* v. *Carpenter,* 7 Minn. 176.

The statutes of Illinois provide that deeds or other written instruments relating to the conveyance of real estate, or

any interest therein, or affecting the title thereto, etc., shall be acknowledged and recorded in order to affect subsequent purchasers; that the term "real estate," as used in the statute, shall be construed as co-extensive in meaning with lands, tenements and hereditaments, and as embracing chattels real. R. S. Ill. 1874, ch. 30, sections 20, 28, 30 and 38. These sections have been construed as authorizing the recording of assignments of mortgages, and it has been held that, unless the assignee of the notes procures and records an assignment of the mortgage, he will not be protected as against a subsequent grantee or mortgagee. *Ogle* v. *Turpin*, 102 Ill. 148.

The statutes of New York provide, and have for many years provided, for the recording of conveyances of real estate, and making them void as against subsequent purchasers unless recorded. It is declared by the statute that the term "conveyance" shall be construed to embrace every instrument in writing by which any estate or *interest* in real estate is created, aliened, mortgaged or *assigned*, or by which the title to any real estate may be affected in law or equity. Following these provisions is that providing that "The recording of an assignment of a mortgage shall not be deemed in itself notice of such assignment to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them or either of them, to the mortgagee." 2 R. S. N. Y. 1875, p. 1151, section 76; *Id.*, p. 1138, *et seq.*

It will be noticed that section 7 of our statute, *supra*, is almost a literal copy of the section above set out. Our registry laws, as most of the western States, were doubtless modelled after the New York statutes, and hence none of them have a provision declaring in explicit terms that assignments of mortgages shall be recorded. That is provided for by the use of general terms, and the section declaring the effect of such an assignment.

In the case of *Ely* v. *Scofield*, 35 Barb. 330, the court, in speaking of the New York statutes, *supra*, said: " The term ' conveyance,' as used in the chapter referred to, shall be con-

strued to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity. * * * By section 41 of the same chapter, (p. 763), it is declared that the recording of an assignment of a mortgage shall not be deemed, in itself, notice of such assignment, to a mortgagor. * * * The references to the statutes embrace all the provisions thereof which' can be claimed to bear upon the questions involved in the present case. * * * It' was competent for the plaintiff to have put his assignment on record, and thus have protected himself against the satisfaction of the mortgage by Brockway. Such record would have been notice to all the world, excepting the mortgagor." The plaintiff here spoken of was the assignee of the notes from Brockway, the mortgagee. This case is fully sustained by many other New York cases. So far as I know, it has never been doubted, but many times approved and followed. See *VanKeuren* v. *Corkins,* 66 N. Y. 77 ; *Vanderkemp* v. *Shelton,* 11 Paige, 28 ; *Belden* v. *Meeker,* 2 Lansing, 470 ; *Belden* v. *Meeker,* 47 N. Y. 307 ; *Greene* v. *Warnick,* 64 N. Y. 220.

Under statutes similar to ours, and those above referred to, the Supreme Court of Texas in the case of *Henderson* v. *Pilgrim,* 22 Texas, 464, said : " Not to consume time, by referring to other cases, we think it is the obvious policy of our registry laws, to require all instruments concerning lands to be recorded in the proper county. (Hart. Dig., art. 2752 * *). We are of opinion, that an assignment of a mortgage is ' a lien affecting the title to land'—' a written contract in relation to land'—' an agreement'—' an instrument of writing of or concerning land,' within the meaning of our registry laws, such as ought to be recorded, to make it effectual against subsequent purchasers, for a valuable consideration, without notice." See again the Supreme Court of U. S., *supra,* under the statute of D. C.

It can not escape observation that our statutes, in force

when the release and mortgage were executed, were as explicit and comprehensive as those of any of the States above referred to, and more so than some of them. The adjudications upon those statutes are authority in the interpretation and construction of ours, and fully support the ruling in the case of *Ayers* v. *Hays, supra.*

.If time and space would permit, the case could be further fortified by the decisions in the other States upon similar statutes. No case to the contrary has been cited, and I take no risk in asserting that a case can not be found under statutes like ours, which supports the principal opinion. It should be observed, too, that in each of the States above named it is held, as in this State, that a mortgage does not convey the legal title, but is of the same force and effect as in this State. In conclusion, I am for protecting the subsequent mortgagee in the case before us, by affirming the judgment of the court below.

